[S.F. No. 22712. In Bank. July 30, 1970.]

JEAN JOHNSON, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
LENTZ CONSTRUCTION COMPANY et al., Respondents.

966

**COUNSEL**

Smith & Burstein and Jack B. Burstein for Petitioner.

Everett A. Corten, Rupert A. Pedrin, Edmund D. Leonard and Dawson B. Leonard for Respondents.

## OPINION

**TOBRINER, J.**—Petitioner Jean Johnson seeks review of an order of the Workmen's Compensation Appeals Board dismissing, on its own motion and before the filing of any responsive pleading, her application for death benefits, on the ground that her husband entered into a compromise and release of all claims, including those of his dependents.

We shall explain why we have held, contrary to petitioner's contentions, (1) that Labor Code section 5000, subdivision (b), authorizes an employee to release claims of his dependents; (2) that Labor Code section 5000, subdivision (b), does not deny petitioner due process of law or the equal protection of the laws; and (3) that petitioner is not entitled to a hearing to determine whether her husband, in executing the release, intended to release claims of his dependents. We point out, however, that the board erred in dismissing the petition on its own motion, before the employer's insurance carrier had raised the release as a defense. A release is an affirmative defense which must be raised and proved by the insurer; petitioner, moreover, should be afforded the opportunity to assert the invalidity of the release on any legally sufficient grounds. We remand the cause for further proceedings consistent with this opinion.

On October 31, 1967, Edwin Johnson, petitioner's husband, in attempting to shut off a tank used to chlorinate a water line being repaired by his employer, Lentz Construction Company, accidentally inhaled chlorine gas and sustained injury to his lungs. On January 10, 1968, he filed an application for compensation benefits. The parties filed extensive medical reports, and the matter came to hearing on June 6, 1968. After several hours of testimony the hearing recessed; during the recess the parties negotiated a compromise. When the hearing reconvened they presented the compromise to the referee; the referee approved the settlement.

The compromise provided for payment of $350 to Dr. Ross for medical treatment, $390 to the Department of Employment, $800 to applicant's attorneys, and the balance of $6,700 to applicant. The compromise agreement was executed on Workmen's Compensation Appeals Board form 15, a mandatory printed form for compromise and release which contains blanks for filling in the names of the parties, the nature of the disability, the amount of compensation, etc. Paragraph 11 of the printed form provides: "Upon approval of the Compromise Agreement by the Workmen's

Compensation Appeals Board or a referee, and payment in accordance with the provisions hereof, said *employee releases* and forever discharges said employer and insurance carrier from *all claims* and causes of action, whether now known or ascertained, or *which may hereafter arise* or develop *as a result of said injury, including any* and all *liability* of said employer and said insurance carrier and each of them *to the dependents,* heirs, executors, representatives, administrators or assigns *of said employee."* (Italics added.)

Mr. Johnson died on January 2, 1969; his widow filed her claim for death benefits on January 27. On February 4 the referee, without hearing or responsive pleading from the employer or insurance carrier, dismissed petitioner's application on the basis of the release executed by Mr. Johnson. The board denied reconsideration.

1. *Labor Code section 5000, subdivision (b), authorizes an employee to release claims of his dependents.*

Division 4 of the Labor Code, at sections 4701 and 4702, provides for burial expenses of $1,000 and a death benefit of $20,000, which increases to $23,000 for a widow with dependent minor children. Section 5000 sets out in part that: "nothing in this division shall . . . Confer upon the dependents of any injured employee any interest which the employee may not release by compromise or for which he, or his estate is in the event of such compromise by him accountable to dependents."

Turning initially to the application of "dependents" as used in the section, we do not believe, as petitioner contends, that the term refers only to persons claiming accrued and unpaid disability benefits under Labor Code section 4700,[1] and not to a person such as a "surviving widow," claiming death benefits.[2] Section 4701, the statutory authority for payment of the death benefit provides that "[w]here an injury causes death . . . the employer shall be liable . . . for . . . a death benefit, to be allowed to

---

[1]Labor Code section 4700 states: "The death of an injured employee does not affect the liability of the employer under Articles 2 and 3 of this chapter so far as such liability has accrued and become payable to the date of the death. Neither temporary nor permanent disability payments shall be made for any period of time subsequent to the death of the employee. Any accrued and unpaid compensation shall be paid to the dependents, or, if there are no dependents, to the personal representative of the deceased employee or heirs or other persons entitled thereto, without administration."

[2]Labor Code section 4702 provides in part that "the death benefit in cases of total dependency, when added to all accrued disability indemnity, shall be the sum of twenty thousand dollars ($20,000) except in the case of a surviving widow and one or more dependent minor children, in which case the death benefit shall be twenty-three thousand dollars ($23,000)."

the *dependents* when the employee leaves any person dependent upon him for support." (Italics added.) ■ Thus, both accrued disability benefits and the death benefit are paid to "dependents," and we must reasonably construe section 5000, in authorizing release of "any interest" of "dependents," to refer both to accrued benefits and the death benefit. We conclude that Labor Code section 5000 empowers an employee to compromise and release claims of his dependents. (See *Miller* v. *Trinity Universal Ins. Co.* (1964) 30 Cal.Comp.Cases 430; *McGee* v. *American Motorists Ins. Co.* (1943) 9 Cal.Comp.Cases 97; *Douglas* v. *Industrial Acc. Com.* (1941) 6 Cal.Comp.Cases 163.)

> 2. *Labor Code section 5000, subdivision (b), does not deny to petitioner due process of law or the equal protection of the laws.*

Contending that her widow's right to a death benefit is independent and separate from the right of her husband to compensation during his lifetime, petitioner submits that Labor Code section 5000, if construed to authorize the employee to release that right, deprives her of property without due process of law and denies her the equal protection of the laws.[3]

To establish the separateness and independence of her right to a death benefit, petitioner cites the case of *Glavich* v. *Industrial Acc. Com.* (1941) 44 Cal.App.2d 517 [112 P.2d 774]. In that matter, the injured husband during his lifetime had failed to file for disability benefits within the statutory period; despite such failure, the widow and children filed their claims for death benefits. Holding that the provisions for funeral expenses and a death benefit did not compose an "inseparable part" of the employee's claim for compensation, the court said: "Death benefit and burial expenses are different and distinct obligations provided for by statute for the benefit of each and all of the individuals dependent upon the workman." (P. 521.) The court further reasoned that "The claim of the widow and minor children had not accrued at the time Mr. Glavich sought to recover compensation for his disability. Since their claim did not then exist, it certainly could not be barred by his failure to apply for compensation." (P. 523.)

From the *Glavich* decision, petitioner concludes that her right, allegedly an independent and absolute one, could not constitutionally be compro-

---

[3]Since receipt of disability benefits by the employee does not bar a later death action, petitioner contends that section 5000 discriminates between widows whose husbands received compensation but did not execute releases, and those whose husbands received compensation and also executed releases. This distinction, she contends, is arbitrary and serves no possible legislative purpose. Nevertheless, assuming that the employee can, for adequate consideration, release his dependents' rights, surely the distinction between dependents whose rights have been released and those whose rights have not been released is not an arbitrary and capricious one.

mised by her husband. ■ Although, as the court noted in *Glavich,* the Legislature has imposed a separate obligation upon employers to afford death benefits to the workman's dependents, the Legislature has also placed conditions upon the payment of such benefits. ■ Section 5000, which is part of the whole legislative scheme of workmen's compensation, confers upon the employee the power to compromise any claims of dependents to death benefits. Since the contingent rights to such benefits derive exclusively from statute (*Ruiz* v. *Industrial Acc. Com.* (1955) 45 Cal.2d 409, 414 [289 P.2d 229]; see *Treat* v. *Los Angeles Gas etc. Corp.* (1927) 82 Cal.App. 610, 615 [256 P. 447]), we cannot ignore the statutory condition attached to their accrual. In *Glavich* the court did not face specific legislation limiting the spouse's separate right to benefits and thus the court was free to effectuate the general policy favoring compensation to workmen and their dependents. ■ In the instant case we confront a clear and specific statute; we cannot so exalt the rights granted under sections 4701 and 4702 of the Labor Code as to render unconstitutional the concurrent limitation on those rights placed by the Legislature in section 5000.

Petitioner also rests her constitutional argument on *Lewis* v. *Connolly Contracting Co.* (1936) 196 Minn. 108 [264 N.W. 581, 583-584], a case in which the court stated: "To hold that the Industrial Commission, on the application of the insurer, the employer, and the injured workman, [had jurisdiction] to approve a settlement between them to which the dependent widow was not a party, of which she had no notice, and at a time when she had in no manner appeared before the commission, [and thus] could deprive her of all right to compensation for the subsequent death of her husband, would be a startling disregard of the law that a stranger to a suit or proceeding cannot be deprived of his property or rights without notice and opportunity to be heard."[4]

Whatever the persuasiveness of the *Lewis* argument regarding the factual situation there, it does not apply to the statutory situation here. The California Legislature, after presumably weighing the considerations for and

---

[4]Decisions in 13 states have held that a release by the decedent cannot bar dependents' claims for death benefits. (See 2 Larson, Workmen's Compensation (1969) § 64.10 and cases cited fn. 4; 101 A.L.R. 1410 (1936).) Nebraska alone has taken a contrary view. (*Lincoln Packing Co.* v. *Coe* (1930) 120 Neb. 299 [232 N.W. 92].) Most of the cases reason simply that the dependents' rights are independent from the employee's claim, but *Lewis* v. *Connolly Contracting Co.* (1936) 196 Minn. 108 [264 N.W. 581, 583-584], and *Smith* v. *Kiel* (Mo.App. 1938) 115 S.W.2d 38, suggest that a holding that the employee's release could bar dependents' claims would deprive the dependents of property without due process of law. None of these cases concern statutes authorizing the release by the employee of dependents' claims, and we have found no decision passing upon the constitutionality of any statute similar to Labor Code section 5000.

against such a measure, has expressly provided that the injured employee may release by compromise any interest his dependents may have in any death benefit. (Lab. Code, § 5000.) No similar enactment confronted the *Lewis* court.

The legislative provision for, and protection of, a complete settlement of all compensation claims could well rest upon sound policy considerations. The Legislature could have recognized the salutary purpose of enabling the parties to enter into an all-embracing, single settlement of all claims arising from the injury, including any claim for death benefits. Since the dependent's right to death benefits stems fundamentally from the fact of employment of the decedent, the Legislature could reasonably have assumed that, in the normal case, the employee would protect the rights of dependents and that any consideration he received for release of those rights would in all likelihood also benefit his dependents. ■ In addition, a release does not take effect until approved by the referee; the requirement that the referee inquire into the adequacy of the compromise (Cal. Admin. Code, tit. 8, § 10882) affords a further protection for the dependents; the referee can disapprove the compromise if he finds the consideration for release of dependents' rights to be insufficient or that the dependents will not receive the benefit of that consideration.

Our decision in *Ruiz* v. *Industrial Acc. Com.* (1955) 45 Cal.2d 409 [289 P.2d 229], presents a useful analogy. In that case the employee died 253 weeks after injury; we held his wife's claim to death benefits to be barred by Labor Code section 5406, which provided that "no such proceedings may be commenced . . . more than 240 weeks from the date of injury." The wife argued that to construe her action as barred before it accrued would constitute a taking of property without due process of law. The court replied simply that "her right to recover death benefits is wholly statutory, and her constitutional objection has no bearing on the issue. . . . The Legislature in plain language has declared the governing time limitations, as it has the right to do." (P. 414.)

3. *Petitioner cannot set aside the compromise and release on the theory that her husband did not intend to release the claims of his dependent.*

■ Petitioner alleges that Mr. Johnson, in executing the compromise and release, did not know that he was releasing her claim to death benefits and did not intend that result.[5] She points to our decision in *Casey* v.

---

[5]Substantial evidence in the record supports this allegation. We note in particular that neither Mr. Johnson's application nor the insurer's answer puts the death benefit in issue, that no pleading or testimony indicates the identity of Mr. Johnson's dependents or the amount of death benefits to which they would be entitled, that of four

*Proctor* (1963) 59 Cal.2d 97 [28 Cal.Rptr. 307, 378 P.2d 579]. In that case we discussed settlements covering later-discovered personal injuries and held that such releases should be set aside if the releasor did not knowingly intend to discharge such liability.[6] Petitioner urges that the same rule applies to releases of workmen's compensation liability.

Petitioner's argument fails because of the significant difference in legal effect between a release of tort liability and a release of workmen's compensation liability. ■ A tort release is effective upon execution, but a compromise and release of workmen's compensation liability is invalid until approved by the Workmen's Compensation Appeals Board. (Lab. Code, § 5001; see *Chavez* v. *Industrial Acc. Com.* (1958) 49 Cal.2d 701, 702 [321 P.2d 449].) California Administrative Code, title 8, section 10882, provides that: "The Appeals Board or referee will inquire into the adequacy of all compromise and release agreements and may, in its or his discretion, set the matter for hearing to take evidence when necessary to determine whether the agreement should be approved, or disapproved. . . ." ■ This inquiry by the referee should carry out the legislative objective of "protecting workmen who might agree to unfortunate compromises because of economic pressure or lack of competent advice." (*Chavez* v. *Industrial Acc. Com., supra*, 49 Cal.2d at p. 702.) ■ These safeguards against improvident releases place a workmen's compensation release upon a higher plane than a private contractual release; it is a judgment, with "the same force and effect as an award made after a full hearing." (*Raischell & Cottrell, Inc.* v. *Workmen's Comp. App. Bd.* (1967) 249 Cal.App.2d 991, 997 [58 Cal.Rptr. 159].)

■ Although we thus reject petitioner's contention, we observe that the board's use of Workmen's Compensation Appeals Board form 15 as

doctors filing medical reports only one discusses the possibility of death resulting from the applicant's injury, and that the compromise and release does not identify the portion of the consideration paid in return for the release of dependents' claims.

[6]In *Casey* v. *Proctor, supra*, 59 Cal.2d 97, 113, we stated: "Whether a release bars an action for later discovered personal injuries is a question of fact and depends on whether it was 'knowingly' made. . . . Whether there is substantial evidence that it was not will depend upon the amount of consideration received compared with the risk of the existence of unknown injuries . . . the presence of bargaining and negotiation leading to the settlement . . . the closeness of the issue of liability . . . whether the subject of personal injuries was discussed . . . and the reasonableness of the contention that the injuries were in fact unknown at the time the release was executed."

In the present case we do not know whether Mr. Johnson and Industrial Indemnity Company considered, discussed, or bargained about death benefits, nor what consideration was paid for the release of death benefits; thus, if *Casey* v. *Proctor* were applied to the release in the present case a factual hearing would be required to explore such questions.

a mandatory form for compromise and release of disability claims[7] creates a risk that the rights of dependents will be released without the proper attention and analysis of the parties or the referee. Although paragraph 11 of that form by logical import releases death benefits,[8] it does not expressly refer to them, and a layman executing that form might be unaware of the fact that he was releasing any claim of his spouse or children to such benefits.

 When the applicant executes a release on form 15 the referee must independently determine whether to approve that release, and in so doing may need to inquire into the adequacy of the consideration given for the release of death benefits. In the ordinary disability proceeding, however, death benefits are not in issue and usually neither the medical reports nor any testimony will apprise the referee of the measure of the risk that death may ensue from the injury. We think the board can, and should, devise a form for compromise and release of disability claims which (1) notifies the applicant of the consequences of the release in clear and nontechnical language, and (2) does not compel the release of death benefits when the parties and the referee lack sufficient information to weigh the desirability of releasing these benefits and the adequacy of the compensatory consideration.

4. *Since the affirmative defense of the compromise and release had not yet been raised by respondent insurer and petitioner had not been given an opportunity to present and prove any grounds for avoiding that compromise and release, the board erred in its premature dismissal of petitioner's application for death benefits.*

 In dismissing petitioner's application on its face, without awaiting

---

[7]California Administrative Code, title 8, section 10874, provides that: "Every compromise and release agreement shall comply with the provisions of Labor Code Sections 5003-5004 and conform to the Appeals Board's forms 15, 16 and 17." Form 15 is the form for use in compromise of an employee's disability claim and was employed in the present case; form 16 is for use in compromise of death cases, and form 17 for third party claims.

Respondent Industrial Indemnity Company suggests that although form 15 is mandatory, the parties, if they had wished to preserve a claim to death benefits, could have struck out or altered paragraph 11 in the form. Respondent board takes no position on this argument, and we are not informed of the practice of the board respecting deletion or alteration of the printed portions of mandatory forms for compromise.

[8]Petitioner contends that paragraph 11 of the compromise, in releasing "all liability . . . to the dependents," was intended to release only liability to dependents for accrued compensation under section 4700. Section 4701, quoted in text on page 969, *ante,* provides for a death benefit to "dependents"; paragraph 11 is part of the printed form promulgated by the board, and the board, in drafting that form, probably intended the term "dependents" to refer both to dependents entitled to accrued compensation and dependents entitled to the death benefit.

receipt of a responsive pleading by the insurer, the referee and board acted precipitately. As the court pointed out in *Raischell & Cottrell, Inc.* v. *Workmen's Comp. App. Bd.* (1967) 249 Cal.App.2d 991, 997 [58 Cal.Rptr. 159], "[t]he assertion of a release in bar is an affirmative defense to an action . . . to which the releasor is entitled to respond." If respondent insurer chooses not to raise the defense of release, that defense might be deemed waived[9] and petitioner thus entitled to recover death benefits. ▆▆ If the insurer asserts the release, petitioner is still entitled to an opportunity to demonstrate the invalidity of the release by reason of fraud, mistake, duress, or undue influence. (*Silva* v. *Industrial Acc. Com.* (1924) 68 Cal.App. 510, 515 [229 P. 870].) ▆▆ Unlike the rule as to judgments (see *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 471-473 [82 Cal.Rptr. 489, 462 P.2d 17]), intrinsic fraud or mistake will suffice to set aside a workmen's compensation compromise or award. (See *Brunski* v. *Industrial Acc. Com.* (1928) 203 Cal. 761, 764-766 [265 P. 918].) We do not know whether petitioner can assert grounds sufficient to set aside the release, which was executed by her husband and approved by the board, but she is at least entitled to the opportunity to attempt to do so.

The decision of the Workmen's Compensation Appeals Board is annulled and the cause remanded to that board for proceedings consistent with the views expressed herein.

Burke, Acting C. J., Peters, J., Sullivan, J., and Devine, J.,* concurred.

**McCOMB, J.**—I dissent. I would affirm the decision of the Workmen's Compensation Appeals Board.

---

[9]Cf. *Hildebrand* v. *Stonecrest Corp.* (1959) 174 Cal.App.2d 158, 165 [344 P.2d 378]; *Baker* v. *Ferrel* (1947) 78 Cal.App.2d 578, 579 [177 P.2d 973].

*Assigned by the Chairman of the Judicial Council.