[L.A. No. 31667. June 2, 1983.]

BONNIE L. SUMNER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, PFIZER, INC., et al.,
Respondents.

COUNSEL

John B. Mestad for Petitioner.

Richard W. Younkin, William B. Donohoe, Alvin R. Barrett, Mark & Bolson and Hogen J. Kallemeyn for Respondents.

## Opinion

GRODIN, J.—In *Johnson* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964 [88 Cal.Rptr. 202, 471 P.2d 1002], we reviewed an order of the then Workmen's Compensation Appeals Board (WCAB) dismissing a widow's application for death benefits on the ground that her husband entered into a compromise and release of all claims, including those of his dependents. In an opinion by Justice Tobriner we held, contrary to the widow's contentions, that Labor Code section 5000, subdivision (b), authorizes an employee to release claims of his dependents; that the statute as so construed did not deprive the widow of due process of law or the equal protection of the laws; and that the widow was not entitled to a hearing to determine whether her husband, in executing the release, intended to release claims of his dependents. We stated, however, "We think the board can, and should, devise a form for compromise and release of disability claims which (1) notifies the applicant of the consequences of the release in clear and non-technical language, and (2) does not compel the release of death benefits when the parties and the referee lack sufficient information to weigh the desirability of releasing these benefits and the adequacy of the compensatory consideration." (2 Cal.3d at p. 974.)

In the 13 years since *Johnson* was decided, the WCAB has failed to comply with our directive. Instead, it continues to use basically the same compromise and release form (form 15) which we criticized in that case. Such a form was used in the instant case, and was held by the WCAB to bar entitlement to death benefits by the petitioner here. We issued a writ of review to consider the legal effect of form 15 in light of the WCAB's absence of alacrity in responding to our mandate.

### *Facts*

Petitioner and applicant Bonnie L. Sumner (hereinafter applicant) is the widow of Charles G. Sumner (employee) who died of a respiratory disease on March 23, 1980, at the age of 64. Employee alleged that he had contracted this disease, which was diagnosed as pulmonary emphysema, during his employment as a packer and loader for employer Pfizer, Inc. (employer), which exposed him to high dust levels. A medical report prepared for employer's insurer attributed half of employee's problems to his longstanding cigarette smoking and half to his working environment.[1]

---

[1]Employee's job history revealed that he drove a truck for many years and, about 1960, began working for the C. K. Williams Co., which was involved in grinding up lime rock for chemicals. Dust would be sent through a pipe into sacks weighing about 50 pounds, and employee would load the sacks onto a pallet. He worked indoors in a very dusty environment, but did not wear a mask because no mask was available at the time.

In the late 1960s, the C. K. Williams Co. was bought and taken over by Pfizer. Employee held the same job except that talc production was added, and the dust in the environment was ap-

Employee dated the onset of lung problems to early 1978. He began noticing a soreness around his upper chest and back which was aggravated with physical exertion, and a cough. In late 1978, he began noticing an increasing cough and some shortness of breath but was able to continue working. Employer advised him to have a physical examination. This was done and his family doctor advised him to stop working because of a chronic lung condition. He did stop working on January 2, 1979, never to return.

At some point in 1979 employee and applicant began discussing a settlement of his then-pending workers' compensation claim with employer. There were two meetings; at neither did employee or applicant have counsel. At the first meeting, employer offered to settle for $15,000. Employee and applicant took that offer to a superintendent at employer's Victor Valley plant, who advised them that the offer was too low and they should reject it. The Sumners went on a vacation to Texas and when they returned there was a letter waiting for them. Pursuant to the letter they went to employer's Lucerne office. There a representative of the employer had some papers and told the Sumners these papers raised the settlement offer to $25,000. The representative said he didn't think employer would offer any more and advised the Sumners to accept the offer. They did, and employee signed the papers on December 4, 1979.

There was no mention at either of the meetings that the execution of the compromise and release agreement would bar applicant's claim for death benefits if her husband died, applicant said. The only discussion, she said, was over employee's injury.

An order approving the compromise and release, as required by WCAB rules (Cal. Admin. Code, tit. 8, §§ 10870, 10882), was made on December 12, 1979. The award provided for payment of $25,000 plus further lifetime medical care, less a credit to employer and its insurer for advances against permanent disability in the sum of $2,030.

Paragraph 11 of WCAB form 15—which must be used in a compromise and release agreement (Cal. Admin. Code, tit. 8, § 10874)—provides, as it did when *Johnson* was decided: "Upon approval of this Compromise Agreement by the Workers' Compensation Appeals Board or a Referee, and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of

---

parently continual and worse. At times, he would notice wheezing and coughing from talc and nausea and he was given a rudimentary mask to cover his nose and mouth, but he couldn't breathe through it and it steamed up his glasses so he stopped wearing it. About 1978, he was required to wear a different type of mask, and he did.

The physician's report indicates that employee started smoking at about age twenty, and thereafter averaged one and a half packs a day.

action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, *including any and all liability of said employer and said insurance carrier and each of them to the dependents, heirs, executors, representatives, administrators or assigns of said employee.*" (Italics added.)

Following employee's death, applicant filed a claim for death benefits. Employer asserted the compromise and release as a bar to her recovery of any death benefits. The workers' compensation judge, while expressing reservations about the continued use of form 15 in light of our decision in *Johnson,* denied applicant's claim. He opined: "The criticism of the Supreme Court [in *Johnson*] seems well founded and Paragraph 11, read by a layman (or even many attorneys) fails to give sufficient language and warning that execution of the document releases the applicant's dependents from any claim for death benefits." Nevertheless, since it could not be said as a matter of law that the settlement was based upon inadequate consideration or induced by fraud or mutual mistake, he refused to set the agreement aside.

In his report and recommendation on applicant's petition for reconsideration, the judge repeated his misgivings about the form. "[W]hile this Workers' Compensation Judge feels that the language should have been changed (and still should be changed) it is not felt that the defect, if any, is so flagrant as to in and of itself provide a prima facia [*sic*] ground for setting aside a Compromise & Release agreement as to its effect upon the claims of a dependent. To make such a finding would open a floodgate of hundreds and perhaps thousands of claims and such action does not seem appropriate to be made by a Workers' Compensation Judge." He added, "If the Workers' Compensation Appeals Board or an Appellate Court finds that the language of the Compromise & Release agreement is sufficiently defective to support a decision that such agreement is not a bar to actions by dependents, such a finding must be made by them."

The WCAB unanimously adopted the judge's recommendation that the petition for reconsideration be denied. Applicant then filed the instant petition for writ of review, which we granted.

## I. *Constitutional Attack*

■ We first confront applicant's argument that barring death benefits pursuant to a compromise and release under Labor Code section 5000, subdivision (b)[2] deprives dependents of an independent and severable constitutional right before it arises.

---

[2]Hereafter, all statutory references are to the Labor Code unless otherwise indicated. Section 5000 provides:

This argument need not detain us long, for we confronted it squarely in *Johnson* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d 964. We concluded in *Johnson* that we could not exalt the right to death benefits granted in sections 4701 and 4702 "as to render unconstitutional the concurrent limitation on those rights placed by the Legislature in section 5000." (*Id.,* at p. 971.) "Since the contingent rights to such benefits derive exclusively from statute [citations], we cannot ignore the statutory condition attached to their accrual." (*Ibid.*) We considered cases from other states holding that releases by the decedent cannot bar dependents' death benefit claims (*ibid.,* fn. 4), but found them unpersuasive in the context of a "clear and specific" statute. (*Ibid.*)[3]

We see no reason to depart from the sound holding in *Johnson,* and applicant has furnished none. Applicant argues that section 5000 is "ambiguous" because it says nothing shall confer upon dependents "any interest" which the employee cannot compromise, and does not refer to death benefits. We found the statute anything but ambiguous in *Johnson,* however, referring to it as "clear and specific." (*Ibid.*) Indeed, the statute leads to the clear conclusion that death benefits may be compromised. *Johnson* so held and nothing has occurred to alter that conclusion.[4]

---

"No contract, rule, or regulation shall exempt the employer from liability for the compensation fixed by this division, but nothing in this division shall:

"(a) Impair the right of the parties interested to compromise, subject to the provisions herein contained, any liability which is claimed to exist under this division on account of injury or death.

"(b) *Confer upon the dependents of any injured employee any interest which the employee may not release by compromise* or for which he, or his estate is in the event of such compromise by him accountable to dependents." (Italics added.)

[3]Absent section 5000, subdivision (b), applicant's argument would be meritorious. Professor Larson declares: "The settlement, compromise, or release by the deceased of his rights under the Act cannot bar the statutory rights of his dependents, since they are independently created by statute." (2 Larson, The Law of Workmen's Compensation (1982) § 64.12, p. 11-177.)

[4]Applicant asserts that *Johnson* is inconsistent with language in *Bianco* v. *Ind. Acc. Com.* (1944) 24 Cal.2d 584, 589-590 [150 P.2d 806], quoted in *Zenith Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 176, 187 [176 Cal.Rptr. 920], to the effect that a dependent's right to the statutory death benefits is not derived from the rights of the deceased employee; it is a right which is "independent and severable from the employee's claim for disability compensation." No such inconsistency exists. Whatever the truth of this concept in other contexts, such as apportionment, the holding of *Johnson* is that the clear import of section 5000, subdivision (b) allows a worker to release death benefits. As we pointed out in *Johnson,* "The legislative provision for, and protection of, a complete settlement of all compensation claims could well rest upon sound policy considerations. The Legislature could have recognized the salutary purpose of enabling the parties to enter into an all-embracing, single settlement of all claims arising from the injury, including any claim for death benefits. Since the dependent's right to death benefits stems fundamentally from the fact of employment of the decedent, the Legislature could reasonably have assumed that, in the normal case, the employee would protect the rights of dependents and that any consideration he received for release of those rights would in all likelihood also benefit his dependents." (2 Cal.3d at p. 972.)

## II. *Validity of Compromise Form*

Applicant's next argument, and the most serious claim before us, is that form 15 of the WCAB, which is used for compromises and releases, is a contract of adhesion which must be interpreted as not covering death benefits.[5]

We rejected this contention in large part in *Johnson*. There, as here, the applicant contended that her husband, in executing the compromise and release, did not know he was releasing his wife's claim to death benefits and did not intend that result. (2 Cal.3d at p. 972.) We distinguished, however, between releases of tort liability and a release of workers' compensation liability. A tort release is effective upon execution, but a workers' compensation release is invalid until approved by the workers' compensation judge. (2 Cal.3d at p. 973; see Cal. Admin. Code, tit. 8, § 10882, requiring appeals board or referee to inquire into adequacy of compromise and release agreements.) We explained: "This inquiry by the referee should carry out the legislative objective of 'protecting workmen who might agree to unfortunate compromises because of economic pressure or lack of competent advice.' [Citation.] These safeguards against improvident releases place a workmen's compensation release upon a higher plane than a private contractual release; it is a judgment, with 'the same force and effect as an award made after a full hearing.'" (2 Cal.3d at p. 973; see also 3 Larson, The Law of Workmen's Compensation (1983) § 82.60, pp. 15-568-15-569.)

We went on to observe, however, that the WCAB's use of form 15 as a mandatory form for compromise and release of disability claims "creates a risk that the rights of dependents will be released without the proper attention and analysis of the parties or the referee. Although paragraph 11 of that form by logical import releases death benefits, it does not expressly refer to them, and a layman executing that form might be unaware of the fact that he was releasing any claim of his spouse or children to such benefits." (2 Cal.3d at p. 974.) Moreover, we noted: "When the applicant executes a release on form 15 the referee must independently determine whether to approve that release, and in so doing may need to inquire into the adequacy of the consideration given for the release of death benefits. In the ordinary disability proceeding, however, death benefits are not in issue and usually neither the medical reports nor any testimony will apprise the referee of the measure of the risk that death may en-

---

[5]Applicant also argues that no consideration was paid for the release of death benefits. This argument, however, is premised on the contention that the trial judge who approved the compromise did not take into consideration compensation for death benefits, because of inadequacies in the compromise form. Thus, we treat this issue together with the attack on the form.

Applicant's argument that employer failed to assert the compromise and release as an affirmative defense is without merit. The record shows that the compromise and release was raised as an affirmative defense at an early stage, in the answer of employer's insurer.

sue from the injury." (*Ibid.*) It was in that light that we admonished the board to revise the form in the manner described above.

In *Johnson,* the compromise and release was entered into during a recess in hearings after several hours of testimony concerning the decedent's disability, and it was approved by the same referee who heard that testimony. (2 Cal.3d at p. 968.) This case, by contrast, illustrates the risk which, in *Johnson,* we anticipated would arise if form 15 were not changed. According to the evidence which so far appears in the record, the compromise and release was entered into by the employee without benefit of independent counsel, on the basis of advice by a representative of his employer, and as a result of discussions in which the impact of the settlement upon death benefits was not mentioned. In such circumstances, the "risk that the rights of dependents will be released without the proper attention and analysis of the parties or the referee" (Johnson, *supra,* 2 Cal.3d at p. 974) is present and palpable.

Accordingly, we declare, in light of the WCAB's procrastination[6] and the demonstration in this case (see also *White* v. *WCAB* (1980) 45 Cal.Comp. Cases 1013), that the risk we anticipated in *Johnson* is far from fanciful, that we will no longer accept form 15—or any form which does not conform to the *Johnson* directive—as precluding inquiry into whether a release of death benefits was knowing and voluntary. As we declared in *Johnson,* the form should first notify the applicant of the consequences of the release—surrender of dependents' right to death benefits—in "clear and non-technical language." The form should also direct the attention of the parties and the referee to the compromise of death benefits in order that they may obtain sufficient information to "weigh the desirability of releasing these benefits and the adequacy of the compensatory consideration." This should alleviate the risk that death benefits will be compromised without proper attention.[7]

We make this declaration prospective—from and after the date our opinion becomes final—so as to avoid unfairness to parties who have relied upon the presumed validity of the present form 15, and the burden upon the workers' compensation system which would result from retroactive application. (Cf. *Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 728 [182 Cal.Rptr. 778, 644 P.2d 1257].) We shall, however, permit petitioner

---

[6]The board, in response to this court's inquiry, has informed us that "every effort to expedite finalization of the new Form 15 conforming to the Court's directive in Johnson . . . is being made."

[7]We realize that in many instances the release of death benefits may be the farthest thing from the mind of an employee who contemplates survival and is not anxious to peer into the yawning chasm of his or her own demise. Moreover, medical reports in some instances may be understandably chary of painting too gloomy a picture of a worker's survival prospects. We require—and *Johnson* required—only that the form focus enough attention on the release of death benefits to enable an informed choice.

to take advantage of this newly declared principle, in recognition of her service in bringing the matter to our attention.[8] As we declared in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 830 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]: "[S]ound principles of decision-making compel us to conclude that, in the light of the particular circumstances of the instant case, the new rule here announced should be applied additionally to the case at bench so as to provide incentive in future cases for parties who may have occasion to raise 'issues involving renovation of unsound or outmoded legal doctrines.'" (See also, *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 74 [145 Cal.Rptr. 368, 577 P.2d 188], cert. den. (1978) 439 U.S. 996 [58 L.Ed.2d 669, 99 S.Ct. 597].) ▮ Thus, we do not extend the reach of the compromise and release in this case to death benefits, unless employer can show, independently of the language in form 15 and the release,[9] that the parties contemplated that the settlement was to include death benefits. If employer is unable to so demonstrate,[10] applicant should be allowed to proceed with her claim.[11]

---

[8]Both employer and the WCAB assert that applicant cannot recover because she made no attempt to set aside or otherwise challenge the compromise and release.

This assertion is incorrect. Applicant's trial brief before the WCAB contended that the compromise and release is invalid and that the board should set aside its approval. She contended that the compromise and release was not in her husband's best interest and that the board failed to inquire into the adequacy of the agreement. (Cal. Admin. Code, tit. 8, §§ 10870, 10882.) She asserted that there was no mention made of death benefits in the printed form, and that paragraph 11 is "ambiguous." She pointed out that employer's insurer had notice since 1970 of the *Johnson* decision and could have or should have attached an addendum to the printed form spelling out the release of death benefits.

At the hearing, however, applicant apparently changed her strategy and no longer attempted to set the release aside, but simply contended it did not cover death benefits. Accordingly, we find no merit to the contention that applicant waived the right to attack the compromise or the form.

[9]We note that the release in this case, aside from the above-quoted language in paragraph 11 of form 15 discharging the employer's liability to the employee's "dependents, heirs, executors, representatives, administrators, or assigns," also contained typewritten addenda. Paragraph 9 stated the intention of the parties that the agreement "compensate applicant for any claim for temporary or permanent disability as a result of the claimed injuries or conditions related thereto." The agreement also provided that the release "will apply to all unknown and unanticipated injuries and damages resulting from such accident, and all rights under Section 1542 of the Civil Code of California are hereby expressly waived." We do not think this language adds anything to paragraph 11 of form 15—it still falls short of stating in clear and unequivocal terms that death benefits are being released. Moreover, to the extent it specifically mentioned disability, it may have exacerbated the problem by misleading applicant and employee as to the nature of the compromise.

[10]On this score, we note that there may in fact be evidence independent of the language in the release. The workers' compensation judge found there was "no evidence that the decedent in this case did not read the Compromise & Release agreement or did not understand it," despite applicant's testimony that death benefits were never discussed. Moreover, when applicant stated that she did not seek to set the form aside, employer rested its case without putting on any evidence in support of the agreement, although employer had witnesses who were prepared to testify.

[11]Employer is also entitled to raise upon remand any other defenses it may have to applicant's claim. We note, however, that if employee's death was caused half by his smoking, a nonindustrial cause, and half by high dust levels in the plant, an industrial cause, this would not give

*Conclusion*

The board's continued use of current form 15, in light of our decision in *Johnson,* is impermissible, and any compromise and release executed on this form after the finality of this decision, which does not conform to the *Johnson* mandate, shall not be deemed to cover death benefits. The order of the WCAB in this case denying applicant's claim as barred by the compromise and release is annulled and applicant allowed to proceed with her claim in accordance with this opinion.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

---

rise to a defense, since apportionment of death benefits is impermissible. (*Zenith Insurance Co.* v. *Workers' Comp. Appeals Bd., supra,* 124 Cal.App.3d 176.)