[No. F012603. Fifth Dist. Apr. 8, 1991.]

DOLORES LOPEZ et al., Plaintiffs and Appellants, v.
RALPH SIKKEMA, Defendant and Respondent.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Sayre, Moreno, Purcell & Boucher, Moreno, Purcell & Schindler, Federico C. Sayre and Hermez Moreno for Plaintiffs and Appellants.

Jacobson, Hansen & Najarian, Jube J. Najarian and Leith B. Hansen for Defendant and Respondent.

## OPINION

**STONE (W. A.), J.**—Appellants are the surviving family members of decedent, Renee Lopez. They include decedent's mother, Dolores Lopez, who is named individually and as administratrix of decedent's estate, and six surviving siblings, four of whom were adults at the time decedent died. Respondent is Ralph Sikkema, who is named individually and doing business as Sikkema Dairy. The issues on appeal are (1) whether a compromise and release approved by order of the Workers' Compensation Appeals Board (WCAB) precludes litigation of appellants' wrongful death and civil rights claims against respondent and (2) whether adult dependent family members, as heirs of decedent's estate, have standing to pursue a wrongful death action against respondent.

### THE FACTS AND PROCEEDINGS

In September 1984 appellants filed a complaint against Donato Estrada, Dieter Ashman and respondent for personal injury, wrongful death, conspiracy to violate civil rights and violation of civil rights.

The complaint alleged: Decedent was a striking farm worker employed by respondent. On September 22, 1983, decedent and several other farm workers cast ballots to determine whether they would be represented by the United Farm Workers. After casting his ballot, decedent proceeded to a company housing site located approximately 200 yards from the election site. Soon thereafter, Estrada and Ashman drove to the housing site and summoned decedent to their car. Respondent had employed Estrada and Ashman as strike breakers and provided them with weapons. As decedent approached the car, Estrada and Ashman shot decedent in the head, fatally wounding him.

Respondent filed a motion for summary judgment or summary adjudication of issues on two grounds: First, the superior court did not have jurisdiction because appellants had executed a compromise and release approved by the WCAB which released respondent from liability for any and all claims arising out of decedent's death, and second, decedent's adult siblings had no standing to maintain a wrongful death action since they are not decedent's "heirs" within the meaning of Code of Civil Procedure section 377.

Appellants opposed the motion, claiming the workers' compensation compromise and release pertained only to the workers' compensation dependency claims and was never understood by them to be a waiver of claims which were not compensable under the workers' compensation act. According to appellants, there remain triable issues of fact regarding the interpretation of the compromise and release, the meaning attributed to the compromise and release by the parties, the status of the compromise and release as an adhesion contract, and the extent of dependency of decedent's siblings for purposes of determining whether they had standing to sue for wrongful death.

The trial court granted the motion for summary judgment, finding:

"FIRST , the applicants signed and are bound by the Workers' Compensation 'Compromise and Release' (Case No. 84 FRE 65307). Upon approval of the compromise agreement and payment in accordance with its provisions, the applicants released and forever discharged the employer and insurance company 'of and from all claims, demands, actions or causes of action, of every kind or nature whatsoever on account of, or by reason of the injury and death sustained' by the decedent.

"SECOND , the compromise agreement has been approved and the applicants have received payment according to established procedures.

"THUS , the applicants were represented by counsel during the Workers' Compensation proceeding and, thus, knew or should have known of the consequences of the Compromise and Release."

DISCUSSION

PART I

*Effect of Compromise and Release*

The parties do not dispute these facts:

In November 1984 appellants executed a compromise and release of their dependency claims which had been filed with the WCAB. The compromise and release form recited the parties agreed "for the purpose of compromise only" that decedent was "[s]hot in the head, resulting in death" and that the injury arose out of and in the course of decedent's employment with respondent. It recited appellants were dependents of decedent and agreed to settle "any and all claims . . . on account of the claimed injury and the death" by payment of a lump sum of $15,000 less an attorney's fee of $1,800. The form reflected that counsel represented appellants. Typewritten in the space following the printed words "Reason for compromise" was the explanation: "Very serious issue as to injury AOE/COE, nature and extent of dependency, if any, burial expenses and identity of dependents. Parties desire to resolve these disputes by way of this compromise and release, which includes interest up to 20 days after order of approval issues by WCAB. Provisions of California Labor Code 5313 are waived."

Paragraph 11 of the compromise and release form provides the following printed language: "Upon approval of this compromise agreement as provided by law, and payment in accordance with the provisions of said order of approval, said applicants and each of them do hereby release and forever discharge said employer and said insurance company of and from all claims, demands, actions or causes of action, of every kind or nature whatsoever, on account of, or by reason of the injury and death sustained as aforesaid by the employee, and in particular of any, all and every claim or cause of action which the undersigned, heirs, executors, representatives, or administrators may have had, now have, or shall hereafter have against said employer, said insurance carrier, and each of them *under Division IV of Labor Code* of the State of California." (Italics added.)

The WCAB approved the compromise and release by order filed in April 1985. The order stated:

"The parties to the above-entitled action having filed a Compromise and Release herein, on November 29, 1984, *settling this case* for $15,000.00 in addition to all sums which may have been paid previously, and requesting that it be approved; and this Board having considered the entire record, including said Compromise and Release, now finds that it should be approved.

". . . . . . . . . . . . . . . . . . .

"Based on the reasons set forth in Paragraph 9 of the Compromise and Release agreement, settlement appears fair and adequate and in the best interests of the parties." (Italics added.)

Appellants each received payment pursuant to the order approving the compromise and release.

The issue before us turns on the meaning and scope of the language of paragraph 11. ██ Respondent contends it clearly and unambiguously releases respondent from any and all claims arising out of the injury and death of Rene Lopez. Appellants, on the other hand, contend the final words of paragraph 11, "under Division IV of Labor Code of the State of California" qualify and restrict the scope of the release only to those claims which are compensable under the workers' compensation act.

██ As recognized by the California Supreme Court in *Johnson* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964 [88 Cal.Rptr. 202, 471 P.2d 1002], the compromise and release form used by the WCAB is a release of workers' compensation liability—it is not a release of tort liability. (*Id.* at pp. 972-973.) Although the issue addressed in *Johnson* is not the same as we face here, we find instructive its discussion of the meaning and scope of a workers' compensation compromise and release and the risks associated with ambiguous language contained in such a release.

In *Johnson*, an employee executed a compromise agreement using the mandatory printed form for compromise and release of workers' compensation. The form provided that the employee release the employer and workers' compensation insurance carrier from "' . . . all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, including any and all liability of said employer and said insurance carrier and each of them to the dependents, heirs, executors, representatives, administrators or assigns of said employee.'" (2 Cal.3d at p. 969, italics omitted.) The employee subsequently died of his injuries and his widow applied for workers' compensation death benefits. The workers' compensation judge dismissed her claim on the

ground that the release executed by her husband released the employer and the insurance carrier from further liability under the act. She claimed her husband did not know he was releasing her claim to death benefits and did not intend that result. She relied upon *Casey v. Proctor* (1963) 59 Cal.2d 97 [28 Cal.Rptr. 307, 378 P.2d 579], which held that tort liability releases which purport to cover later-discovered injuries should be set aside if the releasor did not knowingly intend to discharge such liability. Her claim was rejected.

"Petitioner's argument fails because of the significant difference in legal effect between a release of tort liability and a release of workmen's compensation liability. A tort release is effective upon execution, but a compromise and release of workmen's compensation liability is invalid until approved by the Workmen's Compensation Appeals Board. (Lab. Code, § 5001; see *Chavez v. Industrial Acc. Com.* (1958) 49 Cal.2d 701, 702 [321 P.2d 449].) California Administrative Code, title 8, section 10882, provides that: 'The Appeals Board or referee will inquire into the adequacy of all compromise and release agreements and may, in its or his discretion, set the matter for hearing to take evidence when necessary to determine whether the agreement should be approved, or disapproved . . . .' This inquiry by the referee should carry out the legislative objective of 'protecting workmen who might agree to unfortunate compromises because of economic pressure or lack of competent advice.' (*Chavez v. Industrial Acc. Com.*, *supra*, 49 Cal.2d at p. 702.) These safeguards against improvident releases place a workmen's compensation release upon a higher plane than a private contractual release; it is a judgment, with 'the same force and effect as an award made after a full hearing.' (*Raischell & Cottrell, Inc. v. Workmen's Comp. App. Bd.* (1967) 249 Cal.App.2d 991, 997 [58 Cal.Rptr. 159].)" (2 Cal.3d at p. 973.)

Although the Supreme Court rejected Mrs. Johnson's contention, it criticized the language of the printed form release because the words did not expressly release death benefits.

"Although we thus reject petitioner's contention, we observe that the board's use of Workmen's Compensation Appeals Board form 15 as a mandatory form for compromise and release of disability claims creates a risk that the rights of dependents will be released without the proper attention and analysis of the parties or the referee. Although paragraph 11 of that form by logical import releases death benefits, it does not expressly refer to them, and a layman executing that form might be unaware of the fact that he was releasing any claim of his spouse or children to such benefits.

"When the applicant executes a release on form 15 the referee must independently determine whether to approve that release, and in so doing may need to inquire into the adequacy of the consideration given for the release of death benefits. In the ordinary disability proceeding, however, death benefits are not in issue and usually neither the medical reports nor any testimony will apprise the referee of the measure of the risk that death may ensue from the injury. We think the board can, and should, devise a form for compromise and release of disability claims which (1) notifies the applicant of the consequences of the release in clear and nontechnical language, and (2) does not compel the release of death benefits when the parties and the referee lack sufficient information to weigh the desirability of releasing these benefits and the adequacy of the compensatory consideration." (2 Cal.3d at pp. 973-974, fns. omitted.)

In a subsequent case, *Sumner* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 965 [191 Cal.Rptr. 811, 663 P.2d 534], the court refused to follow its holding in *Johnson* precluding inquiry into whether a release of death benefits was knowing and voluntary because the WCAB had failed to revise its form to refer expressly to the release of death benefits. (33 Cal.3d at p. 972.) In *Johnson* the risks anticipated from the unclear language of the release were merely theoretical since the evidence reflected the release was signed during a recess in hearings after several hours of testimony concerning the decedent's disability and was approved by the same referee who heard the testimony. (*Johnson* v. *Workmen's Comp. App. Bd.*, *supra*, 2 Cal.3d at p. 968.) What was merely theoretical in *Johnson* became reality in *Sumner*. The evidence reflected the employee signed the release "without benefit of independent counsel, on the basis of advice by a representative of his employer, and as a result of discussions in which the impact of the settlement upon death benefits was not mentioned." (*Sumner* v. *Workers' Comp. Appeals Bd.*, *supra*, 33 Cal.3d at p. 972.)

 In this action, although appellants were represented by counsel, there is no evidence the parties discussed the impact of the settlement upon the civil claims then pending. Moreover, nothing in the record before us indicates whether the WCAB referee was aware of the civil action which alleged affirmative and vicarious responsibility for the shooting death as well as conspiracy and civil rights causes of action. We cannot presume the referee had sufficient information upon which to determine the desirability of releasing the dependency claims or the adequacy of the compensatory consideration. In fact, the order makes reference only to "settling this case." (See *Johnson* v. *Workmen's Comp. App. Bd.*, *supra*, 2 Cal.3d at p. 974; *Sumner* v. *Workers' Comp. Appeals Bd.*, *supra*, 33 Cal.3d at p. 972.)

The rationale and analysis in both *Johnson* and *Sumner* are particularly compelling. If the mandatory compromise and release form executed by

appellants was intended to cover claims which are not compensable under the workers' compensation act, it should have contained express language to that effect. Indeed, since the civil action was pending at the time the parties executed the compromise and release, the settlement document would be expected to recite that the release included the particular lawsuit. It does not. Absent such express language, we cannot say as a matter of law appellants released respondent from liability for civil damages by execution of the release form. The ambiguity in the language presents triable issues of material fact about whether the parties understood the compromise and release to release respondent from liability for claims then pending in the civil proceeding which are not compensable under the workers' compensation act.

An injury is compensable under the workers' compensation act when the conditions of compensation concur. (Lab. Code, § 3600.) When the conditions of compensation do not concur, the liability of the employer is the same as if the workers' compensation act had not been enacted. (Lab. Code, § 3602, subd. (c).) One of the conditions of compensation is that the employee, at the time of the injury, "is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment." (Lab. Code, § 3600, subd. (a)(2).) Workers' compensation is not the exclusive remedy when the conduct complained of on the part of the employer cannot be viewed as a risk of the employment—when the employer has stepped outside of the proper role of an employer. (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 161 [233 Cal.Rptr. 308, 729 P.2d 743].) In such cases an action at law for damages is permitted. (*Ibid.*)

The Supreme Court made clear its rationale for allowing a remedy at law in certain cases in its recent decision in *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1 [276 Cal.Rptr. 303, 801 P.2d 1054]: "[T]he legal theory supporting such exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.] The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.'" (52 Cal.3d at p. 16.)

The court went on to explain that a separate civil action may lie when the injury is a result of conduct which cannot be seen as reasonably coming

within the compensation bargain. (52 Cal.3d at p. 20.) If, as the complaint in this action alleges, respondent intentionally armed Estrada and Ashman, with knowledge they would be threatening and intimidating striking farm workers, the shooting death of Rene Lopez cannot reasonably be characterized as "industrial personal injury or death" which the workers' compensation law is designed to compensate.

The exclusivity doctrine does not apply to preclude appellants from alleging a cause of action against respondent for intentionally or negligently causing the shooting death of Rene Lopez. (See *Hart* v. *National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, 1427-1432 [235 Cal.Rptr. 68].) Nor does the exclusivity doctrine apply to preclude appellants from alleging a cause of action against respondent for violation of civil rights. The purpose of the workers' compensation law is to provide a comprehensive scheme of compensation for all employees for industrial personal injury or death. The purpose of an action under the federal civil rights statutes is to compensate those who have been the victim of civil rights violations. (See *Shoemaker* v. *Myers, supra,* 52 Cal.3d at pp. 20-23 [exclusivity doctrine does not apply to preclude cause of action under Gov. Code, § 19683, which is the state whistle-blower protection statute].)

■ Respondent cites *Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967 [104 Cal.Rptr. 42, 500 P.2d 1386], *Pichon* v. *Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488 [260 Cal.Rptr. 677], and *Hollywood Refrigeration Sales Co.* v. *Superior Court* (1985) 164 Cal.App.3d 754 [210 Cal.Rptr. 619], and maintains the order approving the compromise and release of workers' compensation liability should be given res judicata effect on the question of whether all of appellants' claims are compensable exclusively under the workers' compensation act.

In *Busick* v. *Workmen's Comp. Appeals Bd., supra,* 7 Cal.3d 967, the plaintiff filed both a workers' compensation claim and a civil action for damages incurred as a result of having been shot by her former employer. She received a favorable judgment in the civil action but proceeded to pursue her workers' compensation claim. The WCAB concluded her injuries did not arise out of or occur in the course of her employment. (She was shot by her employer when she returned for her final paycheck after quitting her job and starting a competing business.) She challenged the WCAB's conclusion, claiming it was not supported by substantial evidence. The WCAB held the judgment of the superior court was res judicata on the issue of whether her injuries arose out of and occurred in the course of her employment. The *Busick* court agreed, holding the judgment of the superior court was res judicata and precluded her from pursuing her remedy under the workers' compensation act:

"[W]hen a plaintiff has two mutually exclusive remedies, and judgment is rendered in his favor giving him one of the remedies, he cannot thereafter maintain an action for the other." (*Id.* at p. 973.)

In *Young* v. *Libbey-Owens Ford Co.* (1985) 168 Cal.App.3d 1037 [214 Cal.Rptr. 400], this court rejected an attempt to apply *Busick* in the converse situation, such as respondent urges in the present case. The *Young* court noted the analysis of the *Busick* court was based upon two assumptions—that the elements of res judicata had been satisfied and that the remedies available to the employee are mutually exclusive.

*Young* rejected the argument that the workers' compensation award was res judicata when applied to civil claims not compensable under the act: "Respondent notes that the present situation is just the converse of *Busick* and maintains the result should be the same. However, respondent misses the essential basis of res judicata, that the party have an opportunity to litigate the matter previously. In the present matter, appellant could not litigate the issue of intentional infliction of emotional distress before the board because such tort constitutes 'an entire class of civil wrongs outside the contemplation of the workers' compensation system.' [Citations.]" (168 Cal.App.3d at p. 1042.)

*Young* also rejected the assumption of the analysis in *Busick* that workers' compensation and a civil action for damages were mutually exclusive remedies. *Young* relied upon language in *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758], decided after *Busick*. It recognized that cumulative remedies may be available when the employer's deliberate and intentional conduct goes beyond the mere failure to provide a safe workplace. (168 Cal.App.3d at pp. 1043-1044.)

In *Johns-Manville*, the complaint alleged the employer fraudulently concealed the fact that the employee was suffering from asbestosis, thereby preventing him from seeking medical treatment and inducing him to continue working under hazardous conditions. The court held the employee could bring at action at law for such conduct:

"We conclude the policy of exclusivity of workers' compensation as a remedy for injuries in the employment would not be seriously undermined by holding defendant liable for the aggravation of this plaintiff's injuries, since we cannot believe that many employers will aggravate the effects of an industrial injury by not only deliberately concealing its existence but also its connection with the employment. Nor can we believe that the Legislature in

enacting the workers' compensation law intended to insulate such flagrant conduct from tort liability. Finally, although plaintiff filed an application for workers' compensation and may receive an award in that proceeding, double recovery may be avoided by allowing the employer a setoff in the event plaintiff is awarded compensation for the aggravation of his injury in that proceeding and in the present case as well. (See *Unruh* v. *Truck Insurance Exchange* [1972] 7 Cal.3d 616, 636.)" (27 Cal.3d at pp. 478-479.)

The *Young* court adopted this analysis, concluding: "Employers should not be allowed to use the public policy behind workers' compensation as a shield against tort liability for outrageous, nonwork-related conduct. Policy reasons support allowing a common law action even when compensation benefits are available or have been received. Workers' compensation awards may fall short of making the tort victim 'whole' and provide no deterrent effect on an intentionally wrongdoing tortfeasor. [Citation.]" (168 Cal.App.3d at p. 1044.)

Respondent maintains this case is factually distinguishable from *Young* and is analogous to *Hollywood Refrigeration Sales Co.* v. *Superior Court, supra,* 164 Cal.App.3d 754, which held the formal approval of a compromise and release by the WCAB necessarily determined the compensability of a claim for intentional infliction of emotional distress under the workers' compensation act. In *Hollywood Refrigeration* the plaintiff filed a workers' compensation claim for physical injuries resulting from job stress. He subsequently brought a civil action to recover damages from his former employer for intentional infliction of emotional distress. Both actions were based upon the assertion that he had been harassed and abused by his supervisor. His workers' compensation claim was disposed of when he executed a compromise and release which stated that he had suffered injury to, among other things, his psyche, and that the injury arose out of and in the course of his employment. The compromise further recited there was a serious and bona fide dispute between the parties on "several issues" raised by plaintiff's claim and that plaintiff had accepted the compromise and waived any other claims he may have had against the parties. The compromise was approved by formal order of the WCAB. The employer soon thereafter sought summary judgment, claiming the WCAB had exclusive jurisdiction and the res judicata effect of the compromise and settlement on the civil action.

The court recognized there were two lines of cases—those which held an action at law for intentional infliction of emotional distress was the exclusive remedy and those which held workers' compensation was the exclusive remedy. The court noted neither line of cases suggested the two forms of relief were alternative or cumulative. (*Hollywood Refrigeration Sales Co.* v.

*Superior Court, supra,* 164 Cal.App.3d at p. 759.) In other words, as was the case in *Busick,* the court in *Hollywood Refrigeration* concluded the plaintiff had two mutually exclusive remedies for the enforcement of a single cause of action. Since he had accepted compensation under the provisions of the workers' compensation law, he had chosen his remedy. (164 Cal.App.3d at p. 759.)

"The WCAB's formal approval of the compromise settlement necessarily included the determination that the alleged injuries were compensable under the workers' compensation act. [Citation.] The approved compromise is a judgment and has the same force and effect as an award made after a full hearing. [Citation.] The issue of compensability under the workers' compensation law is thus res judicata." (164 Cal.App.3d at p. 759.)

Unlike *Hollywood Refrigeration,* here the WCAB's formal approval of the compromise settlement did not necessarily include the determination that appellants' claims were all compensable under the workers' compensation act. That issue was not foreclosed by res judicata. (164 Cal.App.3d at p. 759.)

Respondent's reliance upon *Pichon v. Pacific Gas & Electric Co., supra,* 212 Cal.App.3d 488, is likewise unavailing. In *Pichon,* a discharged employee sued his former employer for breach of contract, wrongful discharge, negligent and intentional infliction of emotional distress and violation of Labor Code section 3602, subdivision (b)(2) by concealment of a medical report stating he was experiencing an emotional crisis and needed counseling. The *Pichon* court held the trial court erroneously concluded that as a matter of law the execution of a workers' compensation compromise and release covered all of the causes of action alleged in the complaint.

"We conclude that it was also error to hold that, as a matter of law, the release of any and 'all claims and causes of action . . . as a result of said injury' included appellant's claims for wrongful termination which survived summary adjudication. By its terms, the release was directed to claims that arose as a result of the injury described in the release, i.e., the physical and mental injuries appellant suffered as a result of harassment on the job and the termination of his employment. We have concluded that the only claims which survived summary adjudication and appellant's waiver of any noneconomic damages, are limited to economic damages not caused by injuries to appellant's psyche. We have also concluded that appellant would not be entitled to recover any lost wages for any period of time that he was disabled. Thus, the remaining claims cannot be described as claims arising as a result of any compensable injuries to appellant's psyche. At the least, there is an issue of fact as to whether the parties intended the release to cover the

type of claims appellant is now asserting. [Citation.]" (212 Cal.App.3d at p. 502.)

 Respondent contends *Pichon* compels a holding that, as a matter of law, the release here covers all causes of action because appellants are seeking damages resulting from the shooting death, precisely the injury described in the release. However, respondent incorrectly focuses upon the type of physical injury alleged in the release: "A determination whether a cause of action is barred by the exclusive remedy provisions of the workers' compensation law must take into account not only the facts alleged (i.e., of physical injury) but also their relation to the scope and purposes of the workers' compensation statutory scheme." (*Shoemaker* v. *Myers, supra,* 52 Cal.3d at p. 13.)

If the conduct complained of cannot be reasonably viewed as a risk of the employment, an action at law is permitted. (*Shoemaker* v. *Myers, supra,* 52 Cal.3d at p. 20; *Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 161.)

 We do not assume merely from the type of injury stated in the compromise and release that appellants intended to release respondent from liability for civil damages resulting from conduct which is outside of the compensation bargain and therefore outside of the workers' compensation scheme. As the *Pichon* court recognized, "[a]t the least, there is an issue of fact as to whether the parties intended the release to cover the type of claims" now being asserted. (*Pichon* v. *Pacific Gas & Electric Co., supra,* 212 Cal.App.3d at p. 502.)

We therefore conclude the court erred in granting summary judgment since questions of fact remain regarding whether the parties intended the workers' compensation compromise and release to cover the causes of action pending in this proceeding.

## Part II*

. . . . . . . . . . . . . . . . . . . .

## Disposition

We affirm the judgment in favor of respondent and against appellants Guadalupe Lopez, Efren Lopez, Rebecca Lopez and Yolanda Lopez. We reverse the judgment in favor of respondent and against Dolores Lopez, individually, and as administratrix of the Estate of Renee Lopez, Juan

---

*See footnote, *ante,* page 31.

Lopez, and Dolores Lopez as guardian ad litem of Iliana Lopez. The parties shall bear their respective costs on appeal.

Best, P. J., and Buckley, J., concurred.