[Civ. No. 69584. Second Dist., Div. Five. Apr. 10, 1984.]

JOHN J. MOREHOUSE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
GOODYEAR TIRE & RUBBER COMPANY, Respondents.

324

**COUNSEL**

Cantrell, Green, Pekich & Zaks and Richard J. Cantrell for Petitioner.

Charles T. Wheeler as Amicus Curiae on behalf of Petitioner.

Richard W. Younkin, William B. Donohoe, Alvin R. Barrett, O'Melveny & Myers, Robert A. Siegel, T. Warren Jackson and James L. Payne for Respondents.

**OPINION**

**FEINERMAN, P. J.**—Petitioner John J. Morehouse seeks review of the order of respondent Workers' Compensation Appeals Board (Board) denying reconsideration of the findings and order of the workers' compensation

judge disallowing benefits to Morehouse for alleged discriminatory acts by respondent Goodyear Tire & Rubber Company (Goodyear) under Labor Code section 132a.[1] As we shall explain, petitioner is entitled to relief.

Petitioner Morehouse was employed by Goodyear for more than 33 years, commencing July 11, 1946. From 1948 until February 18, 1980, he was employed in the Los Angeles plant as a checker stock clerk. His duties included loading and unloading tires from boxcars. Intermittently throughout his employment, he was an officer, including service as the president, of the union representing Goodyear employees.

On January 20, 1978, he fell and injured himself while unloading tires. He claimed and received compensation benefits, including disability benefits. On April 20, 1978, he returned to work and continued working until February 18, 1980, when Goodyear closed the Los Angeles plant and "laid him off." Morehouse requested preferential rehiring and was subject to recall if Goodyear reopened its Los Angeles plant. He also received periodic payments from Goodyear of supplemental unemployment benefits, remained in contact with Goodyear regarding potential job openings, and did not obtain employment elsewhere.

In February 1981 Morehouse filed an application for reemployment as a warehouseman in Goodyear's Los Angeles warehouse. Goodyear's foreman, Mr. Bunderson, indicated that Morehouse would be reemployed. On July 23, 1981, Bunderson telephoned Morehouse and said that if he was ready, he could go to work. In response to Bunderson's inquiry regarding Morehouse's back and knee, Morehouse said they were as good as when he was laid off. Bunderson said, "Well, great. Come down tomorrow morning and [we] will send you over to the doctor and you can go to work Friday evening." However, later that afternoon, Bunderson telephoned again and said he had changed his mind, and Morehouse would have to be interviewed by Mr. Konnecke, Goodyear's western zone manager.

At the ensuing interview on July 29, 1981, Konnecke told Morehouse that Goodyear could not rehire him because he had the industrial injury claim against Goodyear and it was against company policy to hire anyone who had such a claim. There was also evidence that Goodyear would not rehire him because of his past union activities.[2] Goodyear also cancelled a sched-

---

[1] All further section references herein will be to the Labor Code unless otherwise noted.

[2] In Workers' Compensation Judge Daraban's opinion on decision dated March 8, 1983, he stated: "The second and perhaps dominate motive was the fact that Goodyear would not rehire Mr. Morehouse because of his prior union activities *as candidly admitted by Mr. Konnecke.*" (Italics added.)

uled physical examination which had been set to determine whether petitioner had the ability to perform the job for which he was applying.

On August 12, 1981, Morehouse signed a "Compromise Agreement and Release" (WCAB Form 15) settling his injury claim for $25,000.

The compromise agreement includes recitals that on January 20, 1978, Morehouse sustained injury to his back and leg in the course of his employment by Goodyear; his present disability is still in dispute; he has not returned to work; and the parties "agree to settle any and all claims on account of said injury by the payment of the sum of $25,000.00," and request that the compromise agreement be approved.

Under the subheading, "Reasons For Compromise," the agreement provides: "There exists between the parties a dispute as to permanent disability, apportionment, injury as to parts of body and need for medical care." The agreement contains no reference to a Labor Code section 132a claim for discrimination.[3]

Paragraph 11 of the agreement sets forth the standard form 15, paragraph 11, as follows: "Upon approval of this Compromise Agreement by the Workers' Compensation Appeals Board or a Referee, and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, including any and all liability of said employer and said insurance carrier and each of them to the dependents,

---

[3]Section 132a provides: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file an application for adjudication with the appeals board, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. . . . [¶] Proceedings for increased compensation as provided in paragraph (1), or for reinstatement and reimbursement for lost wages and work benefits, are to be instituted by filing an appropriate petition with the appeals board, but these proceedings may not be commenced more than one year from the discriminatory act or date of termination of the employee. The appeals board is vested with full power, authority, and jurisdiction to try and determine finally all the matters specified in this section subject only to judicial review, except that the appeals board shall have no jurisdiction to try and determine a misdemeanor charge. The appeals board may refer and any worker may complain of suspected violations of the criminal misdemeanor provisions of this section to the Division of Labor Standards Enforcement, or directly to the office of the public prosecutor."

heirs, executors, representatives, administrators or assigns of said employ-ee.''

On August 25, 1981, a board referee issued an order approving the com-promise agreement. Pursuant thereto, Morehouse received $25,000.

On June 22, 1982, Morehouse filed a petition for benefits for discrimi-nation, pursuant to section 132a.

The workers' compensation judge (WCJ) concluded that the evidence clearly established an act of discrimination by Goodyear on the ''dual mo-tives'' of barring reemployment of Morehouse because of his industrial in-jury claim and prior union activities. However, he further concluded that Morehouse was not an employee within the meaning of section 132a when the act of discrimination occurred and therefore was not entitled to any benefits under that section.

On reconsideration, the Board acknowledged that the WCJ had found that the evidence established a discriminatory act by respondent Goodyear. Nevertheless, the Board concluded that the compromise agreement settled any section 132a claim which Morehouse may have had. The Board quoted paragraph 11 of the agreement and stated: ''Pursuant to the above-quoted provisions [paragraph 11] of the Compromise and Release Agreement, ap-plicant agreed to settle all claims arising from the industrial injury herein. The alleged discriminatory act occurred before the Compromise and Release Agreement was approved. Thus, the claim of Labor Code Section 132a discrimination was settled by the Compromise and Release Agreement.''

We find that the workers' compensation judge erred in determining that Morehouse was not an employee within the meaning of section 132a when Goodyear's discriminatory act occurred, and that the Board erred in deter-mining that the compromise agreement settled Morehouse's section 132a claim.

■ We first note that, viewed in the light of the entire record, the evidence indisputably established that Goodyear engaged in a discriminatory act within the meaning of section 132a by refusing to rehire on the grounds of Morehouse's industrial injury claim against the company and his union activities.

■ Thus, we turn to the question whether Morehouse was an employee within the meaning of section 132a when Goodyear's discriminatory act occurred, bearing in mind the declared policy that section 132a must be construed liberally with the purpose of extending its benefits for protection

of the injured person. (§ 3202; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; see *Braewood Convalescent Hospital* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 168 [193 Cal.Rptr. 157, 666 P.2d 14].)

Section 132a applies to "*Any* employer who discharges, or threatens to discharge, or *in any manner discriminates* against *any* employee . . . ." (Italics added.) Here, Goodyear's discriminatory act occurred in the process of reemploying someone who had worked for them for 33 years, who at that time was on "laid off" status, was subject to recall by Goodyear, was receiving supplemental unemployment benefits from Goodyear, remained in contact with Goodyear regarding reemployment, was not employed elsewhere, and was qualified for the open position. In light of these circumstances and recognizing that section 132a must be liberally construed to protect the injured worker, we find that Morehouse was an employee within the meaning of section 132a when the discriminatory act occurred.

■ Once a prima facie case of employer discrimination has been established, the employer has the burden of producing evidence to show that the applicant for an open position was unqualified or that a position was no longer available. (See *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.*, *supra*, 22 Cal.3d 658, 667; *Brewer* v. *Southern California Rapid Transit District* (1983) 48 Cal.Comp.Cases 418.) ■ Here, the record indicates respondent Goodyear did not sustain its burden of producing evidence that petitioner was unqualified or that a position was no longer available.[4]

■ Proceeding to the issue whether the Board erroneously concluded that the compromise agreement settled Morehouse's section 132a claim, we note that, in addition to the declared policy regarding section 132a claims (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.*, *supra*, 22 Cal.3d 658 at p. 668), the Supreme Court has repeatedly expressed strong criticism of the Board's form 15 compromise and release form, and, in particular, par-

---

[4]*City of Anaheim* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 609 [177 Cal.Rptr. 441], relied upon by the workers' compensation judge herein for the proposition that Morehouse was not an employee within the meaning of section 132a at the time of Goodyear's discriminatory act, is inapposite. There, employee Brazz sustained industrial injury while employed by the city, returned to work, then voluntarily resigned and took a similar job with a water company. Subsequently, Mr. Love, a city representative, telephoned the water company manager, stated that Brazz had been an unsatisfactory employee, and suggested that the water company discharge him. The water company rejected the suggestion, and did not discharge Brazz. Thus, as the court noted (124 Cal.App.3d at p. 612), Brazz "suffered no loss of employment or other adverse consequence as a result of what Mr. Love had said." To the contrary, in the instant case Goodyear's discriminatory act directly resulted in adverse consequences to Morehouse.

agraph 11 thereof. (*Sumner* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 965, 967, 969-970, 972-974 [191 Cal.Rptr. 811, 663 P.2d 534].)[5]

In *Sumner,* the Supreme Court reiterated its mandate in *Johnson* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964 [88 Cal.Rptr. 202, 471 P.2d 1002], that the Board devise a form for compromise and release which ". . . '(1) notifies the applicant of the consequences of the release in clear and non-technical language, and (2) does not compel the release of death benefits when the parties and the referee lack sufficient information to weigh the desirability of releasing these benefits and the adequacy of the compensatory consideration.'" (*Sumner* v. *Workers' Comp. Appeals Bd., supra,* 33 Cal.3d 965, 967.)

In *Sumner,* the injured employee signed a form 15 compromise and release settling his industrial injury disability claim for $25,000. There was no specific reference in the agreement to claims for death benefits by the employee's dependents in the event the employee died. The form 15 agreement included the standard paragraph 11. The Supreme Court noted the workers' compensation judge's criticism of the meaning of paragraph 11 when read by a layman, or even by attorneys (33 Cal.3d at p. 969), and stated: ". . . 'Although paragraph 11 of that form by logical import releases death benefits, it does not expressly refer to them, and a layman executing that form might be unaware of the fact that he was releasing any claim of his spouse or children to such benefits.'" (*Id.,* p. 971.)

The court in *Sumner* stated further that after the applicant executes a release on form 15, the referee must independently determine whether to approve it, and, in so doing, may need to inquire into the consideration given for the release of death benefits. The court noted, however, that the evidence before the referee at that time would not usually be sufficient to resolve the consideration issue.

In the instant case, the Board expressly relied on paragraph 11 of form 15 in concluding that the compromise agreement settled Morehouse's section 132a claim. Yet, neither paragraph 11 nor any provision in the agreement specifically referred to the section 132a claim. To the contrary, it merely referred to the July 20, 1978, claim for industrial injury to Morehouse's back and leg, and provided that his present disability from that injury was "still in dispute," that the parties desired to settle all claims on

---

[5]The Board uses form 15 "as a mandatory form for compromise and release of disability claims." (*Sumner* v. *Workers' Comp. Appeals Bd., supra,* 33 Cal.3d at p. 971.) The form 15 used in the instant case bears the notation, "WCAB Form 15 . . . (Rev. 11-74)," indicating that it is the same form used by the Board since November 1974, and the same form that was before the Supreme Court in the *Sumner* case.

account of "said injury," and that the reason for the compromise is that "[t]here exists between the parties a dispute as to permanent disability, apportionment, injury as to parts of body and need for medical care."

Moreover, the record does not indicate that the section 132a issue, or any evidence relating to consideration given for release of the section 132a claim, was before the referee on August 25, 1981, when he made his independent determination approving the agreement. It should also be noted that in workers' compensation practice, a petition for discrimination benefits under section 132a is procedurally separate and distinct from an application for ordinary benefits. (§ 132a; Cal. Admin. Code, tit. 8, ch. 4.5, § 10447; see *Ray* v. *Industrial Acc. Com.* (1956) 146 Cal.App.2d 393, 397 [303 P.2d 793].)[6]

We conclude that petitioner Morehouse has a valid claim against respondent Goodyear under section 132a.[7]

The order of respondent Board denying reconsideration, and the order and findings of the workers' compensation judge on petitioner's claim for benefits under section 132a are annulled. The matter is remanded for further proceedings consistent with the views expressed herein.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied May 8, 1984.

---

[6]Amicus curiae states that it is customary practice of the Board to entertain a section 132a petition only after resolution of the claim for ordinary benefits. Respondent Goodyear, in its supplemental brief in response to amicus curiae, implicitly acknowledges this custom.

[7]In view of our conclusion that the compromise agreement did not settle the section 132a claim, we do not reach the question whether the agreement purportedly exculpated conduct declared a misdemeanor by section 132a.