[No. B007211. Second Dist., Div. Three. May 22, 1985.]

JIMMY RODGERS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
REAL PROPERTY MANAGEMENT COMPANY et al., Respondents.

568

---

---

## Counsel

Mohi & Glasman, Barry M. Appel and Carroll A. Wheatley, Jr., for Petitioner.

Richard W. Younkin, William B. Donohoe, Alvin R. Barrett, Strantz, Sobelsohn & Elkin and Ruth Sobelsohn for Respondents.

---

OPINION

**KLEIN, P. J.**—Petitioner Jimmy Rodgers (applicant) seeks review of the decision of respondent Workers' Compensation Appeals Board (Board) that a compromise and release agreement precludes applicant from claiming benefits for injury sustained by him in a rehabilitation program implemented pursuant to Labor Code section 139.5.[1]

We hold that the Board's decision must be annulled, because the employer and the insurer are obligated to pay ordinary compensation for an injury sustained by an employee while engaged in a rehabilitation program.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Applicant claimed industrial injury to his back on August 29, 1977 (case No. 77 ING 41678), as well as cumulative industrial injury in a period ending in 1978 (case No. 78 CS 000276) while employed as a custodian by respondent Real Property Management Company (Company), insured by Fremont Indemnity Company (Fremont).

On April 26, 1978, applicant, Company and Fremont executed a standard 1974 Board form 15 compromise and release agreement settling both claims (77 ING 41678 and 78 CS 000276) for $3,712. At the request of the parties, the workers' compensation judge (WCJ) approved the agreement.

Under the heading, "Reason for Compromise," on the agreement, the following language is written: "There is serious dispute of injury arising out of and in course of employment, and of apportionment. . . . Any Rehabilitation will be presented solely on companion cases."

The standard form 15 agreement used contains a paragraph 11 which provides: "Upon approval of this Compromise Agreement by the Workers' Compensation Appeals Board or a Referee, and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of *said injury,* including any and all liability of said employer and

---

[1]Unless otherwise noted, all section references herein are to the Labor Code.

said insurance carrier and each of them to the dependents, heirs, executors, representatives, administrators or assigns of said employee." (Italics added.)

Thereafter, a rehabilitation program was implemented pursuant to section 139.5, whereby Company and Fremont provided rehabilitation services for applicant, including provision for applicant's attendance at a trade school and payments for temporary vocational rehabilitation disability. While participating in class at the school in May 1981, applicant injured his back attempting to adjust a drill press table, resulting in his filing the herein claim (case No. 81 MON 45972) against Company and Fremont for compensation benefits for that injury.

The WCJ concluded that applicant was not an employee of either Company or Fremont in May 1981 while participating in the rehabilitation program; that said injury did not arise in the course of employment; and that if it did, the claim is barred by the compromise and release agreement.

The Board granted reconsideration and issued its opinion and decision after reconsideration, with five members of the panel concurring in affirming the WCJ and two dissenting.[2]

## DISCUSSION

### 1. *Board position not well taken.*

The panel majority stated: "The issue is whether a worker, who has released the right to all future ordinary benefits resulting from an industrial injury, is precluded from additional ordinary benefits as the result of a subsequent incident which is claimed to be a compensable consequence of the original injury. We hold that the approved settlement does preclude any further claim for ordinary compensation benefits for the effects of the secondary injury."

In its opinion, the Board quoted and emphasized paragraph 11 of the compromise and release, reviewed authorities on the "compensable consequence" doctrine, and concluded that "[a]lthough the present claim may well involve a compensable consequence of prior industrial injuries, applicant is nevertheless precluded from further pursuit of ordinary benefits by his compromise and release agreement to settle those benefits, the approval of which has long since become final. . . . [¶] The May 1981 incident is

---

[2]Only four members signed the majority opinion. The decision bears a notation that another panel member concurred but did not sign the decision.

precisely the kind of 'claim or cause of action' which the compromise and release agreement covered. Applicant has, therefore, released his right to ordinary benefits for any increased disability which may have resulted from that secondary incident because those are the very benefits contemplated by the settlement agreement. . . . [¶] Applicant is not seeking rehabilitation benefits in his most recent application. On the contrary, he is seeking ordinary compensation, the very benefits which were released by the compromise and release."

The Board majority also opined that the decisions in *Sumner* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 965 [191 Cal.Rptr. 811, 663 P.2d 534] and *Morehouse* v. *Workers' Comp. Appeals Bd.* (1984) 154 Cal.App.3d 323 [201 Cal.Rptr. 154] were distinguishable. The majority concluded its opinion by stating: "Labor Code Section 5410 gave applicant the right to reopen his claims in cases ING 41678 and CS 276 if they caused (or contributed to) any new and further disability. Applicant, however, expressly released this right in exchange for valuable consideration when he settled those cases."

a. *Board dissenting view.*

The panel's two dissenting members concluded that applicant's May 1981 injury was a compensable consequence in that it was a new injury occurring in the rehabilitation program implemented pursuant to the parties' statutory and contractual obligations, and was thus within the "quasi-course of employment." (*Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 158 [151 Cal.Rptr. 666, 588 P.2d 806]; *Laines* v. *Workmen's Comp. Appeals Bd.* (1975) 48 Cal.App.3d 872 [122 Cal.Rptr. 139]; 1 Larson, The Law of Workmen's Compensation (1984) § 13.11, p. 3-348.91, § 13.11(d), p. 3-378 et seq.) The dissenting members, relying on *Sumner* v. *Workers' Comp. Appeals Bd., supra,* 33 Cal.3d 965 and *Morehouse* v. *Workers' Comp. Appeals Bd., supra,* 154 Cal.App.3d 323, further concluded that applicant's compensable injury during the rehabilitation program was not barred by the compromise and release agreement.

2. *Employer and insurer obligated to pay ordinary compensation for injury sustained by employee while engaged in rehabilitation program.*

■ We first address the question whether Company and its insurer, Fremont, are obligated to pay ordinary compensation benefits for the injury sustained by applicant while engaged in the rehabilitation program. If Com-

pany and Fremont had no obligation to so do, then, of course, the compromise and release agreement is immaterial.[3]

An employer's basic obligation to pay compensation benefits is set forth in section 3600, subdivision (a), as follows: "Liability for . . . compensation . . ., shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . in those cases where the following conditions of compensation concur: [¶] (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence. [¶] (4) . . . ."[4]

■ In addition to the employer's obligations under section 3600, the Legislature has enacted section 139.5 to encourage employees to enroll in rehabilitation training by maintaining financial support to help defray their expenses while participating in such programs and to place on employers the primary duty of promptly making rehabilitation available in order to enable injured employees to reenter the work force as soon as practicable. (*Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 628 [170 Cal.Rptr. 32, 620 P.2d 618]; *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 637 [211 Cal.Rptr. 683].)

Section 139.5 provides in part: "(a) The administrative director shall establish . . . a rehabilitation unit . . .: [¶] (1) To foster, review, and approve rehabilitation plans developed by a qualified rehabilitation representative of the employer . . . . [¶] (c) When a qualified injured worker chooses to enroll in a rehabilitation program, he or she shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be. . . ."

■ As provisions of the workers' compensation act, both sections 139.5 and 3600 are to be liberally construed in favor of extending compensation

---

[3]As previously stated, the Board generally resolved the preliminary question of Company's obligation to pay ordinary compensation benefits for the rehabilitation injury by a perfunctory observation that said injury "may well be a compensable consequence of prior industrial injuries," but nevertheless concluded that any claim for such benefits was barred by the compromise and release.

[4]Subsections (4) through (8) of subdivision (a) in essence consist of exclusions of liability where the injury results from the employee's intoxication, self-inflicted injury, suicide or injury in an altercation, which acts are not involved in the instant case.

benefits to the injured worker, and all reasonable doubts whether the injury arose out of the employment are to be resolved liberally in favor of the employee. (Cal. Const., art. XIV, § 4; Lab. Code, § 3202; *Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at pp. 626-627; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]; *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.*, *supra*, 165 Cal.App.3d at pp. 637-638; *Laines* v. *Workmen's Comp. Appeals Bd.*, *supra*, 48 Cal.App.3d at p. 878.) The Supreme Court "has repeatedly recognized that a rule of liberal construction should be applied to all aspects of workers' compensation law." (*LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 241 [193 Cal.Rptr. 547, 666 P.2d 989]; *Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at p. 626; *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.*, *supra*, 165 Cal.App.3d at p. 638.)

As noted in *Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at page 629, the administrative director, pursuant to the Legislature's mandate, has adopted regulations (Cal. Admin. Code, tit. 8, ch. 4.5, § 10001 et seq.) implementing section 139.5. These regulations reiterate the employer's primary duty to provide vocational rehabilitation services through a qualified rehabilitation representative selected by the employer offering an opportunity to restore the employee as soon as practicable to maximum self-support upon knowledge that the employee is unlikely to return to his or her usual or customary employment on a permanent basis; to develop a proposed plan for the employee and submit it to the employee and the rehabilitation bureau; and to pay vocational rehabilitation temporary disability benefits to the employee. The employee may choose to enroll in the rehabilitation program so implemented. (§ 139.5, subd. (c); *Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at p. 628.)

Here, applicant agreed to participate in the implemented rehabilitation program that included his attendance at the trade school for which Company paid the tuition, as well as paying vocational rehabilitation temporary disability benefits. As stated by applicant, and conceded by Fremont, once applicant agreed to participate in the program, he was prohibited from maintaining another job upon penalty of termination of all vocational rehabilitation benefits and was obligated to cooperate in the retraining program and put forth the same effort as though he were performing full-time employment. In that regard, it has been said that in rehabilitation practice the injured worker in a rehabilitation program must be available for rehabilitation eight hours a day, five days a week, and the temporary disability payments are similar to being paid to participate in rehabilitation. (Silberman, Rehabilitation: The Cal. System (3d ed. 1984) p. 145.)

Thus, in the circumstances here, Company and applicant had mutual obligations in the rehabilitation program, as well as mutual benefits in that the

employee benefitted from retraining and the employer benefitted by fulfilling its statutory duty to provide rehabilitation benefits. (See *Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd., supra,* 23 Cal.3d at pp. 161-162; *Laines* v. *Workmen's Comp. Appeals Bd., supra,* 48 Cal.App.3d at p. 877.) We also note the requirements of the workers' compensation act that the employer furnish rehabilitation benefits and that the employee choose to accept them (§ 139.5) are by implication read into the employment contract between them. (*Laines* v. *Workmen's Comp. Appeals Bd., supra,* 48 Cal.App.3d at p. 877; see 1 Larson, The Law of Workmen's Compensation, *supra,* § 13.13, at p. 3-406.) Thus, where, as here, the employee agrees to accept the rehabilitation program provided by the employer, the employer and employee are under both contractual and statutory duties.

a. *Sufficient causal connection exists.*

■ This leads to the crucial question whether there is a sufficient causal connection between applicant's original injury in the course of his employment and his subsequent injury in the rehabilitation program to establish that the subsequent injury was work related and thus arose out of the course of his employment within the meaning of section 3600. (See *Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd., supra,* 23 Cal.3d at pp. 163-166; *Laines* v. *Workmen's Comp. Appeals Bd., supra,* 48 Cal.App.3d at pp. 877-879.)

Preliminarily, we note that section 3600 imposes liability on the employer regardless of negligence. Thus, in view of the Legislature's intention of liability without fault, the narrow definition of causation in tort law has been rejected in workers' compensation law. (*Laines* v. *Workmen's Comp. Appeals Bd., supra,* 48 Cal.App.3d at p. 878.) Thus, the phrase, "proximately caused by the employment," in section 3600 merely means that the injury must be employment caused or connected in the sense that there be a cause and effect relationship between the employment and the injury. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1984) § 10.01(3), pp. 10-3, 10-4.)

Obviously, but for applicant's original injury in the course of his employment with Company, he would not have undertaken the rehabilitation program resulting in his subsequent injury; and thus, although not his usual employment activities, his rehabilitation program activities were nevertheless related to the employment in the sense that they were necessary and reasonable activities incident thereto. (See *Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd., supra,* 23 Cal.3d at p. 165; 1 Larson, The Law of Workmen's Compensation, *supra,* § 13.11.) Applicant's injury in rehabilitation was clearly within the field of risk of Com-

pany's statutory and contractual duties, and there was no break in the causal chain. (See *Laines* v. *Workmen's Comp. Appeals Bd.*, *supra*, 48 Cal.App.3d at p. 878.)

Clearly, the risk of applicant's injury in the rehabilitation program should be borne by Company, not by applicant. (*Id.*, at p. 879.) Consequently, applicant's original industrial injury was the proximate cause of his rehabilitation injury within the meaning of section 3600. (*Id.*, at p. 879.) In view of Company's statutory and contractual duties, it would be folly to say that applicant's injury in the rehabilitation program did not arise out of the nature, condition, obligations and incidents of his employment. (*Laines* v. *Workmen's Comp. Appeals Bd.*, *supra*, 48 Cal.App.3d at p. 876; see *Southern California Rapid Transit Dist.*, *Inc.* v. *Workers' Comp. Appeals Bd.*, *supra*, 23 Cal.3d at p. 162, fn. 2.)

Applying the rule of liberal construction of sections 139.5 and 3600 in favor of applicant, we hold as a matter of law on the undisputed facts that Company and Fremont are liable for all compensation benefits attendant to applicant's injury in the rehabilitation program.

3. *Employee claim not barred by compromise and release agreement.*

█ This leads to the ultimate question whether the WCJ and Board erred in determining that such injury was barred by the compromise and release agreement.

In so determining, the Board relied on paragraph 11 of the agreement. This paragraph 11 is identical to paragraph 11 of the Board's form 15 agreement which has been repeatedly criticized by the courts commencing as early as 1970. (See *Sumner* v. *Workers' Comp. Appeals Bd.*, *supra*, 33 Cal.3d at pp. 967, 969-970, 972-974; *Johnson* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 974 [88 Cal.Rptr. 202, 471 P.2d 1002]; *Morehouse* v. *Workers' Comp. Appeals Bd.*, *supra*, 154 Cal.App.3d at pp. 329-330.) In fact, the Supreme Court in *Sumner* v. *Workers' Comp. Appeals Bd.*, *supra*, 33 Cal.3d at page 967, explicitly directed the Board to devise a new form for compromise and release.[5]

Here, as in *Morehouse* v. *Workers' Comp. Appeals Bd.*, *supra*, 154 Cal.App.3d at pages 330-331, the Board "expressly relied on paragraph 11 of form 15 in concluding that the compromise agreement settled" the employee's claim; and neither paragraph 11 nor any provision in the agreement

---

[5]The dissenting members of the Board panel herein state that "[a] new form complying with the Supreme Court's direction is currently being used."

specifically referred to a claim for future injury in rehabilitation, merely referring to the original industrial injury and the parties' desire to settle "said injury." Also, there is no indication that the $3,712 consideration was given for release of any claim other than that specifically stated in the agreement. (Cf. *Morehouse* v. *Workers' Comp. Appeals Bd.*, *supra*, pp. 330-331.)

The parties have not explained the source or purpose of the handwritten phrase, "[a]ny Rehabilitation will be presented solely in companion cases," inserted in the printed form paragraph 11 of the compromise and release agreement. If the intention of the parties was to exclude from the compromise any future claim connected with rehabilitation, then, of course, the compromise would not bar the herein claim for ordinary or extraordinary compensation benefits attendant to the subsequent new injury in rehabilitation.

If, on the other hand, the intention was merely to exclude from compromise the rehabilitation benefits only (i.e., extraordinary rehabilitation benefits from the original industrial injury) in order to satisfy the section 5100.6 proscription against compromising rehabilitation benefits, then the compromise would still not effectively have waived a claim for ordinary benefits from a new and future injury in the rehabilitation program, especially in view of the rationale of the *Sumner, Morehouse,* and *Johnson* cases and the broad scope of the handwritten insertion in paragraph 11, as well as the rule of liberal construction of all aspects of workers' compensation law in favor of the employee.[6]

Consequently, we hold that the WCJ and Board erred in determining that the compromise and release agreement barred applicant's claim for compensation for the May 1981 injury in the rehabilitation program.[7]

---

[6]Labor Code section 5100.6 provides: "Notwithstanding the provisions of Section 5100, the appeals board shall not permit the commutation or settlement of compensation or indemnity payments or other benefits to which the employee is entitled under rehabilitation."

California Administrative Code, title 8, chapter 4.5, section 10870 provides: "Agreements which provide for the payment of less than the full amount of compensation due or to become due and which undertake to release the employer from all future liability will be approved only where it appears that a reasonable doubt exists as to the rights of the parties or that approval is in the best interest of the parties. No agreement shall relieve an employer of liability for vocational rehabilitation benefits unless the Workers' Compensation Appeals Board makes a finding that there is a good faith issue which, if resolved against the injured employee, would defeat the employee's right to all workers' compensation benefits."

[7]The WCJ also found that applicant's claim was barred by the statute of limitations. However, neither the WCJ in his report on reconsideration nor the Board majority in its decision after reconsideration seeks to justify denial of applicant's claim on that basis. As the dissenting members of the panel correctly noted, applicant's new injury in rehabilitation *in May 1981* was clearly not barred by the statute of limitations.

## DISPOSITION

The opinion and decision of respondent Board after reconsideration, and the findings and order of the workers' compensation judge on petitioner's claim for compensable injury in May 1981 are annulled; and the matter is remanded for further proceedings consistent with the views expressed herein.

Lui, J., and Danielson, J., concurred.

The petitions of respondents Workers' Compensation Appeals Board and Fremont Indemnity Company for review by the Supreme Court were denied July 31, 1985.