[No. B107353. Second Dist., Div. Three. Nov. 5, 1997.]

MIGUEL A. ESTRADA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CORPORATE
GRAPHICS et al., Respondents.

## COUNSEL

Manuel P. Graiwer and Al Plotkins for Petitioner.

William A. Herreras as Amicus Curiae on behalf of Petitioner.

Randall Paddock, Koester & Gelman, Robin I. Ivory, Jackson & Donahue, Delma J. Spence, Zaks, Healy & Owensby and Richard Zaks for Respondents.

Laughlin, Falbo, Levy & Moresi, Michael W. Laughlin, Bennett M. Lieber, Dennis J. Hershewe, Louis Harris, Finnegan, Marks & Hampton, Michael A. Marks and Ellen Sims Langille as Amici Curiae on behalf of Respondents.

## OPINION

**CROSKEY, Acting P. J.**—In this petition for writ of mandate challenging a decision of the Workers' Compensation Appeals Board (the Board or WCAB), Miguel A. Estrada (Estrada), the injured worker, requests relief from the Board's decision regarding his rights to vocational rehabilitation temporary disability (VRTD). We conclude the Board's decision is in error because it relies on a provision of the written compromise and release

(C&R) which Estrada and his employer signed, and under the terms of the C&R itself and the Labor Code, the provision is unenforceable. Moreover, the Board's decision is based on a retroactive VRTD start-up date which is incorrect. We therefore annul the decision of the Board and direct the Board to issue a new and different order consistent with the views expressed herein.

BACKGROUND OF THE CASE

1. *Estrada's Application for Adjudication of Claim*

Estrada was employed as a lithographer by Corporate Graphics. His application for adjudication of claim was filed with the Board in late 1989. In it he states he sustained injury to his head, neck, back, legs, stomach, and psyche from repetitive stress and strain for the period November 6, 1988, to November 6, 1989. The application states that Estrada's right to vocational rehabilitation is at issue. Estrada forwarded his application to the Board with a November 13, 1989, cover letter. In the cover letter, Estrada states: "Demand is hereby made for Rehabilitation pursuant to Labor Code Section 139.5."[1] The letter shows that a copy of it was sent to Nationwide Mutual Insurance Co. (Nationwide), one of Corporate Graphics's workers' compensation insurance carriers.[2]

2. *The Execution of the C&R*

Trial was set for January 23, 1992. On that same day, a C&R was signed by Estrada, and by Corporate Graphics and its workers' compensation insurance carriers, Nationwide and California Casualty.[3]

The C&R is on a WCAB preprinted form with preprinted language and with blank spaces left for specifics of the parties' compromise and release. Paragraph 10 of the C&R, which is entitled "Reason for Compromise, special provisions regarding rehabilitation and death benefit claims, and additional information," contains the following handwritten provision: *"This agreement settles any and all claims for T.D. and VRTD to date. The parties stipulate that the applicant is not a QIW per the report of Dr. Hunt dated 11-29-90. If applicant request [sic] rehab at a later date it is agreed that no*

---

[1]Unless otherwise indicated, all references herein to statutes are to the Labor Code.

[2]Although we refer, in this opinion, to acts taken by Estrada to prosecute his workers' compensation claim, and to acts taken by Corporate Graphics and its workers' compensation insurance carriers regarding Estrada's claim, the parties were, in fact, represented by attorneys throughout this claims process.

[3]Hereinafter, California Casualty and Nationwide are sometimes referred to together, as well as collectively with Corporate Graphics, as "defendants."

*benefits will be paid or owed until applicant is examined by Dr. Paul Endler as an AME.*"[4] Thus, the parties entered into an agreement regarding both accrued and future vocational rehabilitation benefits.

Paragraph 5 of the C&R contains the following preprinted provision regarding vocational rehabilitation: "Unless otherwise expressly ordered by a workers' compensation judge, approval of this agreement DOES NOT RELEASE ANY CLAIM APPLICANT MAY NOW OR HEREAFTER HAVE FOR REHABILITATION OR BENEFITS IN CONNECTION WITH REHABILITATION." An "Order Approving Compromise & Release" (the approval order) was signed by Workers' Compensation Judge Barbara Burke on January 23, 1992. The approval order does not contain an express indication by Judge Burke of her approval of the parties' vocational rehabilitation provision.

### 3. *Events Subsequent to the Execution of the C&R*

On or about September 8, 1993, Estrada filed a request with the rehabilitation unit of the division of workers' compensation for an order that Corporate Graphics provide him with vocational rehabilitation services. The

---

[4]Hereinafter, we refer to this provision as the parties' "vocational rehabilitation provision." The acronyms used in this portion of the C&R have the following meanings. "TD" stands for temporary disability, which is also known as medical temporary disability. It "is the basic benefit payable to a worker who is temporarily disabled due to industrial injury [and] it serves as a substitute for wages lost by the employee during the time he or she is incapacitated from working. [Citations.]" (*Ritchie* v. *Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1179 [29 Cal.Rptr.2d 722].)

As noted above, "VRTD" means vocational rehabilitation temporary disability. This refers to temporary disability payments which generally are received in conjunction with a vocational rehabilitation program, and the "VR" is used "to distinguish [the payments] from medical TD received outside a rehabilitation program. [Citation.]" *Ritchie* v. *Workers' Comp. Appeals Bd., supra,* 24 Cal.App.4th at p. 1181.)

"QIW" means qualified injured worker. In 1989, the year of Estrada's injury, a QIW was defined by the California Code of Regulations, title 8, section 10003, as an employee who met both of the following requirements. First, "[t]he effects of [the employee's] injury, whether or not combined with the effects of a prior injury or disability, if any, permanently preclude, or are likely to preclude the employee from engaging in his or her usual and customary occupation or the position in which he or she was engaged at the time of injury." This was referred to as an employee's "medical eligibility." Second, the employee "can reasonably be expected to return to suitable gainful employment through the provision of vocational rehabilitation services." This was referred to as an employee's "vocational eligibility." In 1989, section 139.5 provided that an injured worker was entitled to begin vocational rehabilitation when he or she had obtained QIW status. ("As a general rule the law at the time of the injury governs rights and liabilities arising out of the injury. [Citation.]" (*Jimenez* v. *Workers' Comp. Appeals Bd.* (1991) 1 Cal.App.4th 61, 67 [1 Cal.Rptr.2d 660].))

"AME" stands for agreed medical examiner.

request states Estrada had obtained "two P&S[5] reports, one from Dr. Capps and the other from Dr. Jones, indicating QIW status."[6] Corporate Graphics objected to Estrada's request for vocational rehabilitation services, arguing that the two doctors' reports would not entitle Estrada to those services since the parties had stipulated in the vocational rehabilitation provision of the C&R that Estrada was not a QIW and had further stipulated that if Estrada were to request vocational rehabilitation, no benefits would be paid or owed to him until he was examined by Dr. Paul Endler as an AME. As of that point in time, Estrada had not been examined by Dr. Endler.

After review by the rehabilitation unit, the matter eventually came before Judge Burke, who rejected defendants' contention that, under the terms of the vocational rehabilitation provision of the C&R, Estrada was not entitled to vocational rehabilitation benefits until he was examined by Dr. Endler. Judge Burke based her decision on the fact that her January 23, 1992, approval order did not specifically approve the vocational rehabilitation provision. She cited to paragraph 5 of the C&R.[7]

The issue of whether the parties' vocational rehabilitation provision could be enforced resurfaced in a disagreement between Estrada and defendants over whether Estrada was entitled to receive retroactive VRTD and retroactive "maintenance allowance."[8] Defendants asserted they had properly delayed giving Estrada vocational rehabilitation benefits, including VRTD, until January 25, 1994, because Estrada was examined by Dr. Endler on that

---

[5]"P&S" stands for permanent and stationary. It is a status in which the injured employee has made as full a recovery from his or her injury as he or she is likely to make.

[6]The reports from these two physicians are dated April 16, 1990 (from Catherine C. Capps, M.D.) and May 18, 1990 (from John Paul Jones, M.D.), respectively. Thus, they predate the C&R.

[7]By her reference to "paragraph 5," Judge Burke called attention to the above-mentioned preprinted provision in the C&R, which states that an applicant's release of claims for vocational rehabilitation benefits will only be effective if that release is expressly ordered by a workers' compensation judge.

[8]The administrative record for the instant case contains references to "maintenance allowance" benefits for Estrada. However, as a technical matter, Estrada could not receive a maintenance allowance because his injury is pre-1990. Pursuant to legislation enacted in 1989 and applicable to compensable injuries occurring on or after January 1, 1990, the term used for payments made to an injured worker during vocational rehabilitation, when the medical condition of the worker has changed from temporarily disabled to permanent and stationary, is "maintenance allowance," also known as VRMA, not VRTD. (*Ritchie* v. *Workers' Comp. Appeals Bd., supra,* 24 Cal.App.4th at pp. 1181-1182.) "Before January 1, 1990, maintenance allowance did not exist, and a worker in a VR program simply 'continued' to receive TD. [Citation.]" (*Jimenez* v. *Workers' Comp. Appeals Bd., supra,* 1 Cal.App.4th at p. 67.) We will use "VRTD" to refer to the benefits which Estrada claims are due him.

day.[9] Defendants contended the parties' vocational rehabilitation provision was effective to (1) release Estrada's claim to VRTD benefits payable up to the date of the C&R (i.e., January 23, 1992), and (2) relieve Corporate Graphics from owing and paying prospective rehabilitation benefits *until* Estrada was examined by Dr. Endler. In contrast, Estrada asserted he was entitled to VRTD retroactive to a date prior to January 25, 1994. Judge Burke again rejected defendants' position regarding the validity of the parties' vocational rehabilitation provision, citing section 5100.6, as well as section 10870 of title 8 of the California Code of Regulations (both of which are discussed *post*). She determined that as a QIW, Estrada was owed VRTD for the period April 17, 1990, through January 24, 1994. Regarding the April 17, 1990, date, Judge Burke referenced the April 16, 1990, report of Dr. Capps (see fn. 6, *ante*).[10]

The Board made a different determination of when Estrada first became entitled to VRTD. It held that his right to VRTD began on September 8, 1993, because Estrada notified Corporate Graphics on that date that he desired rehabilitation services.[11] The Board concluded that Estrada was thus owed VRTD from that date through January 24, 1994, the day he was examined by Dr. Endler. Thereafter, Estrada filed a petition for review with this court, challenging the Board's determination.

## ISSUES TO BE DECIDED

The issue which Estrada asks us to resolve is the date when he first became entitled to VRTD payments. To determine that date, we must necessarily address the question whether the vocational rehabilitation provision in paragraph 10 of the C&R is enforceable. That inquiry, in turn, leads us to review the issue whether an applicant is legally capable of compromising accrued and/or future vocational rehabilitation benefits.[12]

---

[9]Apparently Dr. Endler determined Estrada was a QIW and defendants eventually stipulated to that status.

[10]In her report, Dr. Capps stated her final examination of Estrada was on March 30, 1990, and on that day, she determined Estrada had "reached a point of maximum medical improvement, and he can be considered permanent and stationary for rating purposes." Capps was of the opinion that Estrada was a QIW who needed vocational rehabilitation.

[11]The only evidence of this September 8, 1993, date comes from a letter written by defendants to Estrada. The letter begins: "I am in receipt of your letter dated 9/8/93 along with the [forms you filed with the rehabilitation unit requesting the unit to order us to provide you with rehabilitation services]."

[12]Various amici curiae were invited to and have submitted briefs in this case. Our resolution of this matter was made after full consideration of the arguments and views expressed herein by the respective amici.

DISCUSSION

1. *The Labor Code's Broad Proscription Against Compromising Vocational Rehabilitation Rights Encompasses the Whole of Estrada's Settlement of Those Rights*

 a. *The Board's Decision in Thomas v. Sports Chalet, Inc.*

 Section 5100.6 provides, "Notwithstanding the provisions of Section 5100 [which permit commutation of compensation to a lump sum if certain conditions exist], the appeals board shall not permit the commutation or settlement of compensation or indemnity payments or other benefits to which the employee is entitled under rehabilitation." However, certain workers' compensation cases are exempt from this rule. In *Thomas* v. *Sports Chalet, Inc.* (1977) 42 Cal.Comp.Cases 625, decided in bank (*Thomas*), the Board held that exempt cases "are those . . . in which there is a good faith issue which if resolved against the applicant would defeat the applicant's claim for *all* benefits. Examples of cases exempted are those involving a legitimate issue of injury, employment, initial physical aggressor, statute of limitations, and any other defense of this nature." (*Id.* at pp. 626-627, italics added.) The Board noted that section 5100.6 prohibits compromises of benefits to which an "employee *is entitled* under rehabilitation" (italics added) and therefore it is not "necessary to interpret Section 5100.6 to prohibit complete settlement in this [good faith issue] type of case." (42 Cal.Comp.Cases at p. 633.) "By the manner in which it has qualified the term employee in Section 5100.6 the Legislature has made it clear that where *the employee is injured and has an enforceable right to workers' compensation benefits, the Board should not allow a release of either present or future rights to rehabilitation.*" (*Id.* at p. 632.) By "future rights to rehabilitation," the Board meant that "an employee not initially in need of vocational rehabilitation may, through changes in circumstances, become in need." (*Ibid.*)

Regarding cases which are exempt from section 5100.6's proscription, the Board held it is "of the utmost importance . . . that before a complete release is approved, the trier of fact thoroughly review the record to determine whether a serious and good faith issue exists to justify such a release. In the absence thereof, no compromise and release agreement approved by the Board will relieve the employer from liability for rehabilitation benefits. Accordingly, where such an issue genuinely exists and the right to rehabilitation is to be foreclosed, the trier of fact must make an express finding to this effect and must fully discuss the reasons for so finding." (*Thomas v. Sports Chalet, Inc., supra*, 42 Cal.Comp.Cases at p. 633.)

The Board's decision in *Thomas* was codified in section 4646 in 1989, and is also reflected in section 10870 of title 8 of the California Code of Regulations.[13] *Thomas* was approved in *Burbank Studios v. Workers' Comp. Appeals Bd.* (1982) 134 Cal.App.3d 929, 936 [184 Cal.Rptr. 879].[14]

 b. *Subsequent WCAB Decisions Involving Thomas Matters*

Based on its review of state and national studies on vocational rehabilitation, the Board in *Thomas* voiced its belief that section 5100.6 was enacted because it is in the injured worker's best interests to make use of his or her rehabilitation rights rather than settling them away by taking money in lieu of entering into a vocational rehabilitation program.[15] Nothing in section 5100.6 and nothing in *Thomas* indicates that the proscription in section 5100.6 against settling vocational rehabilitation rights to which an employee is entitled applies only to *future* vocational rehabilitation benefits; nothing in section 5100.6 or in *Thomas* indicates that an employee can validly settle *accrued* vocational rehabilitation benefits to which he or she is entitled. Nevertheless, since *Thomas* was decided, the Board has rendered decisions in which it has permitted settlement of accrued vocational rehabilitation benefits without requiring factual circumstances to support the application of the *Thomas* good faith exemption. (See, e.g., *Sullivan* v. *G & E Ready Mix Concrete* (1988) 53 Cal.Comp.Cases 10; *Waddell* v. *State Comp. Ins. Fund* (1994) VNO 194048, 194760, 22 Cal. Workers' Comp. Rptr. 117; *Waldman*

[13]Section 10870 of title 8 of the California Code of Regulations provides in relevant part: "No agreement shall relieve an employer of liability for vocational rehabilitation benefits unless the Workers' Compensation Appeals Board makes a finding that there is a good faith issue which, if resolved against the injured employee, would defeat the employee's right to all workers' compensation benefits."

[14]While section 5100.6 prohibits an injured worker from compromising away vocational rehabilitation benefits except in the aforementioned exempt cases, the worker can legally *decline* rehabilitation benefits because participation in vocational rehabilitation is voluntary. (§ 4641.) Section 139.5, which provides for the state's rehabilitation unit and individual vocational rehabilitation plans, addresses the rights of a worker who "*chooses* to participate in a vocational rehabilitation program." (§ 139.5, subd. (c), italics added.)

In the instant case, there was no declination of vocational rehabilitation rights. By the language of the parties' vocational rehabilitation provision, Estrada left open the possibility he might request vocational rehabilitation at a later date. To be effective, a declination should be required to meet the same test as a waiver. Thus, to effect a declination, there must be a clear expression of a *present* intent to decline vocational rehabilitation rights. However, to avoid a conflict with section 5100.6, such declination should not be a condition of, or given, in whole or in part, in consideration of, a settlement.

[15]Vocational rehabilitation is so important that the Board has repeatedly held that an injured employee is entitled to VRTD benefits during the period when he or she is evaluated to determine QIW status, even if the worker is ultimately determined not to be a QIW, so long as the employee in good faith presents prima facie evidence which justifies a request for vocational rehabilitation. The court in *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633 [211 Cal.Rptr. 683] affirmed the Board's position.

v. *Safeway Stores, Inc.* (1983) OAK 85358, 11 Cal. Workers' Comp. Rptr. 201.)

 We acknowledge "the well-established principle that contemporaneous administrative construction of a statute by the agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight; and courts will not depart from such construction unless it is clearly erroneous or unauthorized. [Citations.]" (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd., supra,* 165 Cal.App.3d at p. 638.) Nevertheless, we hold that the Board's post-*Thomas* construction and application of section 5100.6, whereby it permits the settlement of accrued vocational rehabilitation benefits where no basis for the application of the good faith exemption is shown to exist, is contrary to the plain language of section 5100.6 and therefore invalid. Under that section, the commutation or settlement of vocational rehabilitation rights is prohibited. The focus of an injured worker should be rehabilitation towards becoming a productive member of society in some employment position, not negotiating to sell rehabilitation rights for the most money he or she can obtain from the employer. We therefore conclude that in the absence of circumstances demonstrating a *Thomas* good faith exemption, section 5100.6 clearly prohibits any commutation or settlement of vocational rehabilitation benefits, *whether accrued or prospective.*

Our decision in *Rodgers* v. *Workers' Comp. Appeals Bd.* (1985) 168 Cal.App.3d 567 [214 Cal.Rptr. 303] should not be read as inconsistent with the conclusion we reach, in the instant case, regarding compromising vocational rehabilitation benefits. *Rodgers* involved an employee who injured himself while attending vocational rehabilitation classes in connection with a previous injury which he suffered in the course and scope of his employment. The employee filed a workers' compensation claim, for the new injury, against the employer who was providing him with the vocational rehabilitation program, but the employer refused to provide the employee with workers' compensation benefits for the new injury. We held there was a sufficient causal connection between the employee's original injury which had caused him to enroll in the vocational rehabilitation program and this subsequent injury, so that it could be said that the subsequent injury was work related and compensable under the worker's compensation laws. (*Id.* at pp. 574-575.) We further held the employer was "liable for all compensation benefits attendant to [the employee's] injury in the rehabilitation program." (*Id.* at p. 575.)

Additionally, in *Rodgers* we held that certain language in the compromise and release agreement signed by the employee and his employer for the

original injury was not clear enough to be construed to be a bar against the employee's claim for workers' compensation for the injury incurred in the rehabilitation program. (*Rodgers* v. *Workers' Comp. Appeals Bd.*, *supra*, 168 Cal.App.3d at pp. 575-576.) By this latter holding, we impliedly held that a compromise and release could bar such a claim, if worded clearly enough. However, we wish to emphasize that under section 5100.6, absent facts demonstrating a *Thomas* exemption, no employee can validly compromise a claim for vocational rehabilitation benefits to which he or she would be entitled as a result of an injury incurred during a rehabilitation program.

### 2. *The Parties' Vocational Rehabilitation Provision Is Unenforceable*

We affirm Judge Burke's conclusion that the vocational rehabilitation provision in paragraph 10 of the C&R is unenforceable. Paragraph 5 of the C&R specifically requires a workers' compensation judge to *expressly* approve Estrada's release of any vocational rehabilitation benefits. This is a *Thomas* requirement, and a requirement of section 10870 of title 8 of the California Code of Regulations. When an approval order is silent with respect to an attempted settlement of vocational rehabilitation benefits, no such settlement is accomplished.

Judge Burke's approval order did not expressly sanction Estrada's release of claims for accrued and prospective vocational rehabilitation benefits. Judge Burke did not make a *Thomas* finding that there exists a good faith issue which, if resolved against Estrada, would defeat his right to all workers' compensation benefits. The provisions of paragraph 5 of the C&R operated as a condition precedent to the enforceability of the parties' vocational rehabilitation provision. Because the condition precedent did not occur, Estrada's agreement to waive his accrued VRTD rights, and to let prospective vocational rehabilitation benefits hinge on his being examined by Dr. Endler, never became enforceable against him.[16]

### 3. *Our Rejection of the Vocational Rehabilitation Provision Has Not Effected a Rewriting of the C&R*

■ Defendants contend our rejection of the vocational rehabilitation provision means we may not enforce the remaining provisions of the C&R because to do so would amount to an impermissible rewriting of the parties' settlement agreement. According to defendants, ruling that the vocational rehabilitation provision is unenforceable means we must also rule that the parties are restored to their pre-C&R status. We do not agree with this position.

---

[16]The record does not reflect that defendants ever requested reconsideration of Judge Burke's approval order to have it include a *Thomas* finding.

In *Burbank Studios* v. *Workers' Comp. Appeals Bd.*, *supra*, 134 Cal.App.3d 929, the employee and employer disagreed on the proximate cause of the employee's injury. The parties entered into a compromise and release and therein set out the fact and nature of this disagreement. Included in the compromise and release were the following provisions: "Approval of this Compromise and Release by the Judge is tantamount to a specific finding that a legitimate issue of [employee's] injury . . . exists and that the requirements of the *Thomas* decision have been met in terms of resolving the applicant's claim to rehabilitation. *This Compromise and Release is submitted and predicated upon that basis* and defendants specifically request that in any order issuing forth approving this Compromise and Release, . . . a distinct basis be indicated in such approval [for finding] that a bona fide issue of injury . . . does exist." (Italics added.) By these provisions, the parties made clear that that there would only be a compromise and release of the employee's workers' compensation claims if the approval order included a specific finding (and a basis for that finding) that the case was exempt from section 5100.6's proscription against settlement of vocational rehabilitation benefits.

The *Burbank* court observed that a compromise and release is governed by the same legal principles which govern other contracts. Thus, courts "ha[ve] no authority to fashion a compromise and release agreement to which the parties have not themselves agreed. [Citation.]" (*Burbank Studios* v. *Workers' Comp. Appeals Bd.*, *supra*, 134 Cal.App.3d at p. 935.) The court stated that in determining whether to approve the subject compromise and release, the WCAB had three options. The Board was restricted to approving the compromise and release as it was drawn by the parties, disapproving it and "thereby leaving the parties in the same position that they were prior to its signing," or proposing "some form of conditional action" with the parties having the right to accept or reject the proposal, and with rejection of it returning them to their pre-compromise and release status. (*Id.* at p. 937.) The court held that what the WCAB could *not* do is give a partial approval of the compromise and release by approving all of its terms except for the provision relating to vocational rehabilitation benefits.

The instant case is factually different from *Burbank.* Here, the enforceability of the C&R was not specifically hinged on the validity of the vocational rehabilitation provision. As we read the C&R, the parties agreed, in paragraph 5, that a workers' compensation judge's approval of the C&R itself would not mean that Estrada had effectively released any claim to vocational rehabilitation benefits unless the workers' compensation judge expressly stated that such a release had been effected. By striking the parties' vocational rehabilitation provision but enforcing the remainder of their C&R, we are simply enforcing the terms of the C&R, including

paragraph 5. If we were to hold that the invalidity of the vocational rehabilitation provision renders the entire C&R invalid, we would be rewriting the C&R by including a *Burbank Studios*-type "all bets are off" clause that the parties did not see fit to include for themselves. Instead, we have simply held that an illegal provision cannot be enforced.

### 4. *The Appropriate Date for Beginning VRTD*

■ Section 139.5 sets out an injured worker's rights to disability payments during his or her participation in vocational rehabilitation. In 1989, the year of Estrada's injury, the relevant portion of section 139.5 stated: "When a qualified injured worker chooses to enroll in a rehabilitation program, he or she shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be."

As noted above, Estrada forwarded his application for adjudication of claim to the Board together with a cover letter, and the letter was dated November 13, 1989. Both the application and the cover letter indicated Estrada's desire for vocational rehabilitation. A request for vocational rehabilitation that is made in an application filed with the Board is sufficient to create a duty in the employer to provide those benefits. (*Belmontez* v. *Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 786, 794-795 [9 Cal.Rptr.2d 405].) "Ordinarily, an employer has the duty to provide VRTD to a qualified injured worker from the time the employee chooses vocational rehabilitation. [Citations.]" (*Pereira* v. *Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 1, 6 [241 Cal.Rptr. 302]; accord, *Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621 [170 Cal.Rptr. 32, 620 P.2d 618].)[17]

*Pereira* involved the question whether VRTD can be awarded retroactively to a QIW for a period *prior* to his or her presentation of a prima facie case of QIW status. The court determined such benefits can be awarded retroactively. (196 Cal.App.3d at pp. 2, 6.) Since the QIW is entitled to VRTD beginning when he or she chooses vocational rehabilitation, the VRTD payments are retroactive to that date. The court quoted from *San Diego Transit Corp.* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 635,

---

[17]The *Webb* court noted there are situations where VRTD will begin to accrue even earlier than the time the employee requests vocational rehabilitation benefits. The court stated: "We . . . hold that if an employer knows an employee is potentially in need of rehabilitation but fails either to fully inform him of his right thereto or to notify the [Rehabilitation B]ureau, the employee's delay in requesting rehabilitation is excused, and temporary rehabilitation benefits are payable from the time the employer knows of the potential need." (*Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at p. 626.)

637 [170 Cal.Rptr. 40, 620 P.2d 626], wherein the Supreme Court stated: "[Section 139.5] requires only that the employee be a qualified injured worker, not that he be formally adjudicated as such." In the instant case, the parties ultimately stipulated that Estrada is a QIW.

The record shows Estrada, a QIW, demanded vocational rehabilitation as early as November 13, 1989. Defendants are therefore responsible for VRTD retroactive to that date, or to an earlier date if evidence shows the earlier date applies (see fn. 17, *ante*). However, defendants are entitled to a credit, against said retroactive payments, for the TD payments which they made to Estrada after November 13, 1989, and for any other duplicative benefits which may have been paid.

### 5. *This Case Shall Have Prospective Application Only*

■ With respect to the settlement of accrued vocational rehabilitation benefits, this case shall have prospective application only. It shall not apply to those cases where, as of the date of the finality of this opinion, the parties have already entered into a written compromise and release agreement which (1) purports to settle accrued vocational rehabilitation benefits, and (2) has been expressly approved by a workers' compensation judge.[18]

We give this opinion prospective application because it has become common for employers and their injured employees to compromise and settle *accrued* vocational rehabilitation benefits despite the absence of circumstances demonstrating the presence of a *Thomas* good faith exemption. Doubtless, the negotiated release by the employee of such accrued benefits is often a significant part of the consideration for the employer's agreement to resolve other disputed issues. In short, parties involved in contested worker's compensation proceedings have relied on this accepted practice, and otherwise binding agreements have been concluded and are now extant. By holding that this opinion should be applied prospectively, we recognize that we have worked a change in the way the workers' compensation system has been operating, and that retroactive application could have an overwhelmingly adverse affect on that system and on the reasonable expectations of those participating in it. The resulting uncertainty and lack of finality of contracts thought to be concluded would constitute a significant negative consequence which would far outweigh any benefits which might be realized

---

[18]By our words "expressly approved by a workers' compensation judge," we mean to include those compromise and release agreements which have been approved in writing by a workers' compensation judge, whether or not such written approval specifically mentions the settlement of accrued vocational rehabilitation benefits.

by a retroactive application of the holding in this case. (See *LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 246, fn. 13 [193 Cal.Rptr. 547, 666 P.2d 989]; *Sumner* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 965, 972 [191 Cal.Rptr. 811, 663 P.2d 534]; *Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 727-728 [31 Cal.3d 715, 182 Cal.Rptr. 778, 644 P.2d 1257].)

### DISPOSITION

The decision of the Board is annulled. The cause is remanded to the Board and the Board is directed to issue a new and different order consistent with the views expressed herein.

Kitching, J., and Aranda, J.,* concurred.

A petition for a rehearing was denied November 25, 1997.

---

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.