**Shelly I. CLARK, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

No. S–2384.

Supreme Court of Alaska.

July 28, 1989.

Charles W. Coe, Smith, Coe & Patterson, Anchorage, for appellant.

James M. Bendell and Cheryl M. Jones, James Bendell and Associates, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Chief Justice.

**I. FACTS AND PROCEEDINGS**

Shelly I. Clark suffered an injury while employed as a bus driver for the Municipality of Anchorage on December 15, 1981. Evidently, driving a bus with very stiff steering caused pain in her back, left leg, left shoulder, left arm, left wrist, and left side generally. After the injury, the Mu-

nicipality paid $22,566.11 for temporary total disability benefits, $4,860.84 in permanent partial disability benefits, and paid for Clark's medical treatment.

Following a determination by Dr. Brudenell, Clark's treating physician, that Clark had a permanent partial physical impairment of six percent "related to the spinal injury," Clark and the Municipality entered into a compromise and release. This was approved by the Alaska Workers' Compensation Board on November 25, 1983. The compromise and release provided that the Municipality would pay $22,400 to Clark as settlement for any and all physical injuries that she may have sustained as a result of the December 15, 1981 injury.

Under the terms of the settlement, the Municipality would no longer be liable to Clark for any disability compensation, past or future. The agreement also provided that the Municipality would remain responsible for future medical expenses. The agreement provided in this respect:

> It is specifically agreed that the employer shall be responsible, under the terms of the Alaska Workers' Compensation Act, for reasonable and necessary medical expenses related to the employee's injury.

Clark incurred medical expenses after the compromise and release was signed. She received acupuncture treatment from Dr. Park and Dr. Rowen. She visited Dr. Brudenell at least one more time, on April 15, 1984. On that date Dr. Brudenell noted in his records that Clark's symptoms were, at least in part, psychosomatic. He recommended a neurological examination which was conducted by Dr. Alpha, who found nothing abnormal neurologically. Dr. Alpha also expressed the view that Clark's problem was probably psychological.

In August of 1984, Clark began consulting with Dr. Martin, a chiropractor. Dr. Martin diagnosed a spinal subluxation and assigned Clark a permanent impairment rating of 20%. He rejected the possibility that Clark's symptoms were psychosomatic.

On September 5, 1985, the Municipality refused to pay for Clark's chiropractic treatment and other further medical treatment, taking the position that such treatment was unrelated to Clark's injury of December 15, 1981.

On February 1, 1986, Clark submitted to an examination by Dr. Haldeman, a board-certified neurologist and chiropractor. Dr. Haldeman noted that it was "extremely difficult to find any objective findings at all except for some mild diffuse localized tenderness." Dr. Haldeman concluded that Dr. Martin incorrectly applied the AMA standards to reach the disability rating of 20%. He believed that Dr. Brudenell's 1983 rating was generous to Clark.

Clark applied to the Board for an Adjustment of Claim on October 31, 1985. She sought to require the Municipality to continue payments for her medical treatment and to set aside the compromise and release in order to establish a 20% permanent partial disability rating. The Board denied both of Clark's requests. The superior court affirmed.

On appeal, Clark raises three contentions. First, she argues that the Board erred in concluding that she was not entitled to expenses for chiropractic care. Second, she contends in the alternative that the compromise and release should be set aside if the Board is affirmed in its refusal to approve expenses for future care. Clark's third argument is that the Board erred in refusing to award permanent partial disability for her "scheduled" injuries, that is, to her upper and lower extremities.

## II. DISCUSSION

■ Clark's first point on appeal is that the Board erred in concluding that she was not entitled to expenses for continuing chiropractic treatment. She notes, correctly, that the Board seemed to base this conclusion on its finding that Clark was "no longer disabled." The Board stated on the last page of its twelve-page decision: "Clark also claims that she is entitled to further chiropractic treatment. Again, since we have determined that Clark is not disabled, she is not entitled to further chiropractic treatment at this time." This is all the

Board said on the issue as to whether Clark is entitled to further chiropractic treatment.

We have carefully read the Board's decision and can find no antecedent discussion in which the Board concluded that Clark was no longer disabled. The Board finds that Clark has no left arm or left leg disability, but does not speak at all to the question whether or not the six percent permanent partial disability persisted.[1] The Board's decision is thus internally inconsistent. It appears to conclude at the end of a long decision that Clark is not disabled. However, no such determination is set forth and excerpts quoted by the Board, from the testimony of the witness on whom the Board primarily relied, confirm that Clark still suffers pain due to back injury.

Moreover, under the compromise and release the employer was to be liable "for reasonable and necessary medical expenses related to the employee's injury." In order to deny Clark's claim for expenses for continuing chiropractic treatment, a finding based on substantial evidence must be made that such treatment is not reasonable and necessary or is not related to Clark's injury. Since the Board made no such finding, its order denying Clark's claim for chiropractic treatment must be reversed and this case must be remanded for further proceedings.[2]

Clark's second point on appeal is mooted by our decision on the first issue.

■ In her third point on appeal, Clark claims that the Board erred in refusing to award permanent partial disability for her "scheduled" injuries to her upper and lower extremities. The Board, applying the factors set out by this court in *Witt v. Watkins*, 579 P.2d 1065 (Alaska 1978),[3] found that the terms of the compromise and release control this issue. Specifically, the Board addressed each *Witt* factor,[4] con-

---

1. In its decision, the Board cites evidence which suggests that this relatively minimal permanent partial disability continues. The Board notes that Dr. Haldeman found Dr. Brudenell's rating of six percent to be "extremely generous because it gave full credence to Clark's subjective complaint," but not that it was erroneous. The Board also noted that "Dr. Haldeman testified consistent with his February 1, 1986 report that Clark has a soft tissue injury and a strain of the cervical and thoracic muscles." The Board noted that Haldeman testified that these injuries continue to cause pain, but that Clark should be able to learn to deal with this pain.

2. Concerning the value of ongoing chiropractic treatments, Dr. Haldeman stated in his report that Clark showed a greater need of justification for her complaints "than is normally experienced by individuals with musculo-skelatal injuries. Nevertheless, because she showed significant improvement in her symptoms one has to assume that the treatment was of some value to her." However, in his deposition Dr. Haldeman questioned the value of further treatment in Clark's case:

   Q Now, in Shelly Clark's case you're not stating that treatment can't be of value to her, are you?
   A I'd really question whether she will respond to treatment. I believe she will have ongoing symptoms for a prolonged period of time, ongoing complaints for a period time, going from doctor to doctor, and anybody who will give her an answer and try to treat her, she will accept their care passively with very little benefits.

Q Are you aware of the improvements that she has had since undergoing chiropractic treatment?
A Yes. And I mentioned that she did improve. The primary benefit as I perceive at this time was her becoming independent of medical drugs which was probably detrimental to her.

3. The Board and both parties assume that *Witt* controls the modification or vacation of a compromise and release which has been approved by the Board. We note that some courts treat releases of this type differently than they would a simple release of tort liability. *See, e.g., Johnson v. Workmen's Compensation Appeals Bd.*, 2 Cal.3d 964, 88 Cal.Rptr. 202, 207, 471 P.2d 1002, 1007 (1970); *Chavez v. Industrial Accident Comm'n*, 49 Cal.2d 701, 321 P.2d 449 (1958). Because all parties agree that *Witt* should control this case, we do not decide this issue.

4. In *Witt* we established the standard for setting aside a release:

   The test should be whether, at the time of signing the release, the releasor intended to discharge the disability which was subsequently discovered. Relevant to the determination of this question are all of the facts and circumstances surrounding execution of the release. Also relevant to the determination is whether a reasonable person in the position of the releasor under the circumstances then existing would have had such an intent.

   *Witt*, 579 P.2d at 1068 (footnote omitted). We also listed several factors useful in determining whether a release was properly obtained:

cluded that the release was properly obtained, and that "[a]t the time of signing the release, the releasor intended to discharge the disability which was subsequently discovered." The Board's findings in this respect are supported by substantial evidence. We therefore hold that Clark was not entitled to an additional permanent partial disability award.

For the above reasons, this case must be remanded to the superior court. The superior court is to remand it to the Alaska Workers' Compensation Board with directions to determine whether Clark's chiropractic expenses are reasonable and necessary and related to her compensable injury. The Board's determination that Clark is not entitled to an additional permanent partial disability award for injuries to her upper and lower extremities is affirmed.

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.

[F]actors that may be considered are the manner in which the release was obtained—including whether it was hastily secured at the instigation of the releasee; whether the releasor was at a disadvantage because of the nature of his injuries; whether the releasor was represented by counsel; whether he relied on representations of the releasee or a physician retained by the releasee and whether liability was seriously in dispute. The relative bargaining position of the parties and the amount to be paid should also be considered. *Id.* at 1070 (footnotes omitted).